Patricia Sue JONES, on behalf of herself and all others similarly situated, Plaintiff,

v.

Donald L. BLINZINER, individually and as Administrator of the Indiana Department of Public Welfare; Robert F. Smith, individually and in his capacities including Acting Administrator of the Indiana Department of Public Welfare; Marion N. Steffy, individually and in her capacity as Assistant Administrator of the Indiana Department of Public Welfare, Defendants.

No. L 81–67.

United States District Court, N. D. Indiana, Hammond Division at Lafayette.

March 29, 1982.

Lesley M. Guyton, Legal Services Program of Northern Indiana, Inc., Lafayette, Indiana, Peter Cassady, Indianapolis, Ind., for plaintiff.

Linley E. Pearson, Atty. Gen. of Indiana, Indianapolis, Ind., H. Hanley Hammel, Lafayette, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff filed this class action on October 2, 1981 seeking preliminary and permanent injunctive relief and declaratory relief against the state defendants to prevent them from enforcing the policies outlined in their Implementation Letters # 1, # 2 and # 3, dated September 1, 4 and 8, 1981, respectively with regard to implementing the amendments to Section 402(a) of the Social Security Act, Public Law 97–35, 95 Stat. 357 (1981). The plaintiff specifically seeks declaratory relief that the "150% rule", as stated in Implementation Letter # 1, as applying to the ratably reduced standard of need instead of the standard of need conflicts with Section 402(a)(18) of the Social Security Act, Public Law 97–35, Section 2303 and thus is invalid under the Supremacy Clause of the Constitution of the United States. The plaintiff also seeks declaratory relief that the notice used by defendants did not conform with 42 U.S.C., Section 602(a)(4), 45 C.F.R. Section 205.-10(a)(4) and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and therefore the termination of plaintiff and proposed class from the AFDC and Medicaid Programs are illegal and invalid under the Supremacy Clause of the Constitution of the United States. The plaintiff further seeks declaratory relief that all the statements of policy contained in Implementation Letters # 1, # 2 and # 3 are null and void pursuant to I.C. 4–22–2–2 since defendants issued them with the force and effect of law without first having them promulgated, approved and filed as rules in conformity with I.C. 4–22–2–1 et seq.

Finally, the plaintiff and proposed class seek an order enjoining defendants, their successors in office, agents, employees and all persons in concert and participation with them from enforcing any of the policies contained in Implementation Letters # 1, # 2 and # 3 and further ordering the defendants to reinstate and grant to plaintiff and all class members their AFDC and Medicaid benefits to which they were and are otherwise entitled. The plaintiff and proposed class also seek an order requiring defendants to give notice to all members of the class of the court's decision in this matter and of reimbursement procedures for wrongfully denied AFDC and Medicaid benefits.

Also pending in this matter is a Motion to Intervene. Intervening plaintiffs' Amended Motion to intervene raises an additional issue and request for relief. They seek an order enjoining defendants from denying four months of Medicaid coverage to persons whose AFDC benefits are terminated because of increased earned income so far as that policy and practice are contrary to 42 U.S.C., Section 1396a(e).

The defendants maintain that their actions are in conformity with the law and that plaintiffs should be denied any relief. Defendants have also filed a Motion to Dismiss on the grounds that plaintiff lacks standing to bring this action, plaintiff failed to exhaust her administrative remedies, plaintiff failed to state a claim upon which relief can be granted, or in the alternative to join Richard Schweiker, individually and in his official capacity as Secretary of Health and Human Services as an indispensable party. Each of these issues will be addressed separately.

An evidentiary hearing and oral argument was held in Lafayette, Indiana, on October 23, 1981. In accord with the procedure there announced this case is ripe for ruling.

## I. FINDINGS OF FACT

1. The State of Indiana participates in the AFDC and Medical Assistance programs described in Titles IV and XIX of the Social Security Act, 42 U.S.C., Section 601 et seq. and Section 1396 et seq., respectively, through which the federal government partially reimburses participating states for the financial and medical assistance benefits provided to eligible families and for the cost of administration of the programs.

2. As a condition to receiving federal funds, Indiana is required to operate AFDC

and Medical Assistance programs in conformity with the requirement of the Social Security Act and implementing federal regulations.

3. Implementation of Pub.Law 97–35 adversely affected a class of more than 61,800 AFDC cases as of September 30, 1981. Joinder of all recipients in those cases would be impracticable.

4. Pearl M. Johnson, Theryl Weber and Rita Thompson were AFDC recipients adversely affected by the implementation of Pub.Law 97–35. Their amended motion to intervene and complaint contained common and closely related questions of law and fact with the original complaint filed in this case. The motion to intervene was timely made and disposition will not prejudice the parties.

5. The defendants' policies and practices regarding implementation of Pub.Law 97–35 adversely affected the AFDC and Medicaid benefits of the named plaintiffs. The plaintiffs have suffered injury per se in the violation of the constitutional due process rights and have suffered injury from the actual as well as threatened loss of AFDC and Medicaid benefits. Further, the plaintiffs have a personal stake in the outcome of this case in that the decision bears directly on their eligibility to receive AFDC and Medicaid benefits. Plaintiffs Patricia Sue Jones, Pearl M. Johnson, Theryl Weber and Rita Thompson have standing to sue.

6. The situations of the named plaintiffs were typical to the class. Further, common questions of law and fact, concerning the actions and policies of the defendants bind the named plaintiffs and their class.

7. Plaintiffs are capably represented by attorneys from the Legal Services Program of Northern Indiana, Inc., who will provide fair and adequate representation for their clients and others similarly situated.

8. A class action is a superior means for adjudicating the issues in this case, particularly for reasons of judicial economy and public policy. The defendants have acted on grounds generally applicable to the entire class of AFDC recipients adversely affected, so relief extending to that class would be appropriate.

9. Defendant, Donald L. Blinzinger, is the Administrator of the Indiana Department of Public Welfare and is responsible for the management and operation of that Department.

10. Defendant, Robert F. Smith, was Acting Administrator of the Indiana Department of Public Welfare during the initial period of change in policy and procedure due to Pub.Law 97–35.

11. Defendant, Marion N. Steffey, is the Director of the Division of Public Assistance of the Indiana Department of Public Welfare.

12. The plaintiffs are challenging the practices and policies of the Indiana Department of Public Welfare and not any particular budget decision of the Department. The fair hearing procedure provided for in administrative appeals cannot provide the relief requested by plaintiffs in this case.

13. The plaintiffs are seeking relief for the allegedly illegal policies and actions of the Indiana Department of Public Welfare with regard to the implementation of Pub.Law 97–35. They are not challenging Pub.Law 97–35 nor the federal regulations promulgated thereto. Richard Schweiker, as Secretary of Health and Human Services, has no vital interest which he will not be able to adequately protect if he is not added as a party nor is he needed in order to grant the complete relief requested.

14. Indiana updated its standard of need in 1969 to its present level pursuant to the Amendments to the Social Security Act of 1967. 42 U.S.C., Section 602(a)(23); 470 I.A.C. 10–3–6 et seq. The present standard of need allows a standardized amount for basic, special and shelter needs.

15. Indiana determines the amount of an AFDC payment by applying a ratable reduction to the total needs of an AFDC recipient. I.C. 12–1–7–3.1.

16. Federal Regulations promulgated in light of the changes made in the Social Security Act by Pub.Law 97–35 define need

standard as "the money value assigned by the State to the basic and special needs it recognizes as essential for applicants and recipients." 45 C.F.R. Section 233.-20(a)(3)(ii)(E).

17. AFDC cases in which benefits are denied, discontinued, reduced, terminated or suspended due to an initial eligibility determination, a change in client's circumstances or a redetermination of a client's eligibility require a notice which is adequate if it meets the following requirement:

"Adequate" means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing (if provided) and a State agency hearing, and the circumstances under which assistance is continued if a hearing is requested. 45 C.F.R. § 205.10(4)(i)(B).

18. AFDC cases in which benefits are reduced or terminated due to changes in federal and/or state law require a notice which is adequate if it meets the following requirement:

When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be "adequate" if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued. 45 C.F.R. § 205.10(4)(iii).

19. AFDC recipients are automatically entitled to Medicaid Benefits and separate application by AFDC recipients for Medical benefits is prohibited. 42 C.F.R. Section 435.909.

20. Medicaid recipients which are going to be terminated, discontinued or suspended due to changes in the recipients' circumstances or redetermination of the recipients' eligibility require a notice which is adequate if it contains a statement of what action the agency intends to take, the reasons for the intended action, the specific regulations or change in federal or state law that requires the action, and an explanation of the individual's right to request an evidentiary hearing if one is available or in cases of an action based on a change in law, the circumstances under which a hearing will be granted and an explanation of the circumstances under which Medicaid will be continued if a hearing is requested. 42 C.F.R. Section 431.210; see, 42 C.F.R. Section 435.919.

21. The standardized notices sent by the Department of Public Welfare to notify AFDC recipients of terminations or revisions in AFDC eligibility due to the changes in law contained in Pub.Law 97–35 provided the following information:

a. The action the agency intends to take (termination, reduction, suspension, discontinuance of AFDC benefits.

b. The reasons for the action (total income is more than 150% of adjusted needs, DPW can no longer issue checks for less than $10.00, deeming of step-parent income to AFDC recipients.

c. The specific law citation authorizing the agency's action.

d. An explanation of the recipient's right to a hearing and the circumstances under which aid will be continued pending a hearing.

The notice contained no information regarding the calculations upon which eligibility was determined nor the fact that Medical Assistance benefits would also be terminated if AFDC benefits were terminated due to ineligibility.

22. The word "rule" within the meaning of the Indiana Administrative Rulemaking Act means:

... "any rule, regulation, standard, classification, procedure or requirement of any agency, designed to have or having the effect of law or interpreting, supplementing or implementing any statute, but does not include resolutions or directions of any agency relating solely to

internal policy, internal agency organization or internal procedure which do not have the force of law and does not include administrative adjudication." I.C. 4–22–2–3.

23. Any "rule" which is not promulgated, approved and filed as a rule in conformity with the procedure outlined in the Indiana Administrative Rulemaking Act is invalid, void and of no force or effect. I.C. 4–22–2–2.

24. An AFDC recipient who is terminated from the program because of an increase in earned income who received AFDC benefits in at least three of the six months immediately preceding ineligibility is eligible for Medicaid for four additional months following ineligibility. 42 U.S.C., Section 1396a(e).

25. AFDC recipient, Peggy Riley, is an adult resident of Kokomo, Indiana who received AFDC and Medical Assistance benefits for herself and one minor son until October 1, 1981 when her benefits were terminated. She earns approximately $284.00 per month. Her shelter expense is $215.00 per month. She and her son require regular medical care for continuing medical problems.

26. Plaintiff, Theryl Weber, is an adult resident of Evansville, Indiana who received AFDC and Medical Assistance benefits for herself and three minor children until November 1, 1981 when her benefits were terminated. She earns approximately $500.00 per month. Her shelter and special needs expenses are approximately $464.00 per month. She and her daughter have continuing medical problems which require regular medical attention.

## II. MOTION TO INTERVENE

Three individuals, Pearl M. Johnson, Theryl Weber and Rita Thompson filed a Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure in order to assert the claims set forth in their proposed complaint on October 20, 1981. They contended that their claim and the cause of action of the original complaint have common questions of law, that they are members of the class as defined in the original complaint and that the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. On November 3, 1981, the intervening plaintiffs filed an Amended Motion to Intervene as plaintiffs in order to raise an additional claim for relief in this cause. The defendants objected to the Motion to Intervene on the grounds that it was untimely, that the intervenors failed to set forth that the representation of the existing plaintiffs is inadequate to protect their interests and that defendants will be prejudiced by the untimely motion. The defendants did not respond to the amended motion to intervene.

The decision of whether to permit permissive intervention is in the sound discretion of the court. In making the decision, the court must consider whether the motion was timely made and whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed.R.Civ.Proc. 24(b).

The determination of timeliness requires the court to consider all the circumstances surrounding the Motion to Intervene. *National Association for the Advancement of Colored People v. New York*, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). The time element itself must be considered but the mere lapse of time by itself does not make an application untimely. See, *Legal Aid Soc. of Alameda Co. v. Dunlop*, 618 F.2d 48 (9th Cir. 1980). The court must also consider whether the applicant was in a position to seek intervention at an earlier stage of the case but the most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case. *Armstrong v. Board of School Directors of the City of Milwaukee*, 471 F.Supp. 827 (E.D.Wis.1979), *aff'd*, 616 F.2d 305 (7th Cir. 1980).

In applying this test to the case presently before the court, the court finds that the Amended Motion to Intervene was timely made. Although the amended mo-

tion was filed after the hearing on preliminary injunction, it will not unduly delay or prejudice the interests of the parties to the original action. Further, the fact that the amended motion raises another issue not presented by the original complaint does not require the court to deny intervention. The additional issue raised by intervening plaintiffs is closely related to the issues raised in the original complaint and the disposition of that issue will avoid the multiplicity of suits without prejudicing the parties. The court, in its sound discretion, hereby GRANTS the Amended Motion to Intervene.

## III. CLASS ACTION

Plaintiff seeks to maintain this case as a class action under the Federal Rules of Civil Procedure 23(a) and 23(b)(2). The proposed class would be composed of all Aid to Families with Dependent Children (AFDC) and Medicaid recipients who have had or will have their AFDC and Medicaid benefits reduced or terminated pursuant to the policies contained in the Implementation Letters # 1, # 2 and # 3, dated September 1, 4 and 8, 1981, respectively. The class would also include all persons in the State of Indiana who have applied or will apply for AFDC benefits and whose applications have been or will be denied or whose grants will be diminished below what they otherwise would be because of the policies contained in the Implementation Letters # 1, # 2 and # 3, dated September 1, 4, and 8, 1981, respectively.

Rule 23(a)(1) of the Federal Rules of Civil Procedure provides that, as a condition of class certification, the class must be so numerous that joinder of all class members is impracticable. The language of Rule 23(a)(1) does not set a specific numerical requirement nor has one been imposed by the courts. However, "the one who asserts the class must show some evidence or reasonable estimate of the number of class members." 3B Moore's Federal Practice, paragraph 23.05(3)(2d Ed.1978). See, e.g., Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968); Long v. Thorton Tp. High School

District 205, 82 F.R.D. 186, 189 (N.D.Ill. 1979). To meet this burden, plaintiff need not allege the exact number or identity of the class membership, Long, supra, at 189; Wolfson v. Solomon, 54 F.R.D. 584 (S.D.N.Y.1972); Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966); and generally a good faith estimate is sufficient where it is difficult to assess the exact class membership. See, Brady v. Lac, Inc., 72 F.R.D. 22 (S.D.N.Y. 1976).

Plaintiff cites certain statistics indicating that as of September 30, 1981, there were 61,828 AFDC cases or a total of 174,046 AFDC recipients in the State of Indiana. All of these individuals are affected by defendants' alleged failure to comply with the provision of the Indiana Administrative Rulemaking Act, I.C. 4–22–2–1 et seq. Statistics also indicate that for the period from October 1980, through March 1981, 16.3% of AFDC cases received earned income. Thus, approximately 10,080 cases or 28,370 individuals received earned income in addition to AFDC in the State of Indiana as of September 30, 1981. Statistics further indicate that between 10% and 12% of all AFDC cases would be closed as a result of the 150% rule which would terminate between 4000 and 7000 AFDC cases. The alleged failure to provide adequate notice to individuals being terminated because of policies contained in the Implementation Letters has adversely affected not only those terminated because of the application of the 150% rule, but all individuals terminated for any reasons contained in the Implementation Letters. Thus, the numerosity requirement for purposes of Rule 23(a)(1) has been met.

The second prerequisite to maintaining a class action is that there must be questions of law or fact common to the class members. With respect to the present case, the defendants contend that the nature of the claims asserted by plaintiff are antagonistic because the claims raised by the proposed class are much broader than the claims raised by the class representative and thus do not meet the commonality requirement of Rule 23(a)(2). The defendants' argu-

ments on this requirement, however, are without merit. In this case, the question of whether defendants' policies, as contained in Implementation Letters # 1, # 2 and # 3 violate the Constitution of the United States, the applicable federal laws and regulations and Indiana's Administrative Rulemaking Act is common to the class as a whole. Therefore, the plaintiff has fulfilled the commonality requirements of Rule 23(a)(2).

■ A third requirement for class certification is that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The standard for determining typicality is not identity of interest, but whether there is a "sufficient homogeneity of interest." *Sosna v. Iowa*, 419 U.S. 393, 403, n.13, 95 S.Ct. 553, 559, n.13, 42 L.Ed.2d 532 (1975). The basic issue is whether all potential class members would benefit in some way from a favorable judgment. *Ellis v. Naval Air Rework Facility, Alameda, Cal.*, 404 F.Supp. 391, 396 (N.D.Cal.1975), *rev'd on other grounds*, 608 F.2d 1308 (1979). In this case, the named plaintiff has been found ineligible to receive AFDC and Medicaid benefits as a result of the defendants' method of implementing Pub.Law 97–35 as contained in Implementation Letters # 1, # 2 and # 3. She challenges the policies and method of implementation as violative of the Constitution of the United States, federal laws and regulations and the Indiana Administrative Adjudication Act. A determination in favor of the plaintiff by this court would benefit not only the named plaintiff but also the other members of the class. The named plaintiff has no interests which would conflict with other members of the class and thus meets the typicality requirement of Rule 23(a)(3).

■ The fourth requirement for class certification is that the representative party fairly and adequately protect the interests of the class. The fundamental element of Rule 23(a)(4) is whether the representative party is able to protect diligently and thoroughly the interests of the class members. *Brennan v. Midwestern United Life Insur-*

*ance Co.*, 259 F.Supp. 673 (N.D.Ind.1966). Their interest, and their counsel, must be such that they can and will vigorously pursue the class interests along with their own. *Hohman v. Packard Instrument Co.*, 399 F.2d 711 (7th Cir. 1968). Since the relief plaintiffs seek is identical to the relief sought for the entire class, it is not inconsistent in any way with the interests of the members of the class. The plaintiffs have a personal stake in the outcome of the litigation which precludes any possibility of it being collusive. The defendants argue that the claims raised by the proposed class are much broader than the claims raised by the class representative and that consequently the named plaintiff would not adequately represent the interests of the class. Although adequacy of representation is of utmost importance in a class action if the demands of due process are to be met, *see Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940), the record in this case indicates that the named plaintiff will zealously pursue all the claims advanced on behalf of the class they propose to represent. Thus, the plaintiff has fulfilled the fourth requirement under Rule 23(a)(4).

In addition to meeting all four requirements of Rule 23(a), the proposed class must meet the requirements of one of the three sections of Rule 23(b). Rule 23(b)(2) provides that class certification is appropriate when a party or parties opposing the class have acted or refused to act on grounds generally applicable to the class, thereby making final injunctive or declaratory relief appropriate with respect to the class as a whole. In this case, defendants have adopted AFDC and Medicaid policies which apply across the board to all members of the class. Injunctive and declaratory relief affecting all who would be adversely affected by the challenged policies is an appropriate way for the court to address this matter. Therefore, the motion to certify this as a class action is GRANTED. Accordingly, the court hereby certifies the following class:

■ All AFDC and Medicaid recipients who have had or will have their AFDC and

Medicaid benefits reduced or terminated pursuant to the policies of the defendants contained in their Implementation Letters # 1, # 2 and # 3, dated September 1, 4 and 8, 1981, respectively, and all persons in the State of Indiana who have applied or who will apply for AFDC benefits and whose applications have been or will be denied or whose benefit grants will be diminished below what they otherwise would be because of the policies of defendants contained in their Implementation Letters # 1, # 2 and # 3, dated September 1, 4 and 8, 1981, respectively.

## IV. MOTION TO DISMISS

The state defendants filed a Motion to Dismiss this action for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants have moved this court, in the alternative, to order that Richard Schweiker, individually and in his official capacity as Secretary of Health and Human Services, be joined as a party defendant pursuant to Rule 19 of the Federal Rules of Civil Procedure.

### A. *Standing*

■ The defendants have alleged that the original plaintiff lacks standing to bring this lawsuit and that the case should therefore be dismissed for lack of jurisdiction. In support of this allegation, the defendants contend that the original plaintiff has suffered no actual injury and has no personal stake in the outcome of this action because she is appealing the decision to discontinue her grant and the State has continued her assistance grant pending the outcome of her fair hearing. By order of this court this date, three additional plaintiffs have been permitted to intervene in this cause. The court will construe the defendants' Motion to Dismiss for Lack of Standing to apply to all plaintiffs in this case. For purposes of ruling on a motion to dismiss for want of standing, this court must accept as true all material allegations of the complaint, and

must construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Jenkins v. McKeithen*, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1848–1849, 23 L.Ed.2d 404 (1969).

■ The issue of standing raises the question whether the litigants are entitled to have the court decide the merits of the dispute or of particular issues. *Warth v. Seldin*, 422 U.S. at 498, 95 S.Ct. at 2204. This inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. *Warth v. Seldin, supra; Barrows v. Jackson*, 346 U.S. 249, 255–256, 73 S.Ct. 1031, 1034–1035, 97 L.Ed. 1586 (1953).

■ The constitutional dimension of standing requires a plaintiff to meet the "case or controversy" requirement within the meaning of Article III, Section 2 of the Constitution of the United States. A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). Thus, the threshold question of federal court jurisdiction is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant his or her invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his or her behalf." *Warth v. Seldin, supra; Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1962).

■ To determine whether a plaintiff has alleged a sufficient personal stake in the outcome to confer jurisdiction, the court must inquire whether the plaintiff has shown "some threatened or actual injury resulting from the putatively illegal action (of defendants)" *Warth v. Seldin, supra; Linda R. S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973); *see, Association of Data Processing Service*

*Org., Inc., v. Camp*, 397 U.S. 150, 151–154, 90 S.Ct. 827, 829–830, 25 L.Ed.2d 184 (1970). The Supreme Court of the United States has held that where an action is inevitable, it is irrelevant whether there will be a time delay before it occurs. "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974), *quoting Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 664, 67 L.Ed. 1117 (1923). Further, the law is clear that injury, to be the basis for standing, does not have to be of great monetary value. *See, Aiken v. Obledo*, 442 F.Supp. 628 (E.D.Cal.1977). For injury in fact to exist, the injury suffered need not be "significant—a trifling injury is enough." *United States v. SCRAP*, 412 U.S. 699, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *see also, Chicago Housing Ten. Org., Inc., v. Chicago Housing Authority*, 512 F.2d 19, 22 (7th Cir. 1975).

■■■■ Standing also has a prudential characteristic which requires an inquiry into the relation between the alleged injury in its relation to the claim for relief. When the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction. *Warth v. Seldin, supra*, at 499, 95 S.Ct. at 2205; *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *see, Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Further, even when a plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, a plaintiff generally must assert his or her own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin, supra; Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). The question, therefore, is whether or not the interest sought to be protected by a plaintiff is arguably within the zone of in-

terests to be protected by the statute or constitutional guarantee in question. *Association of Data Processing Service Org. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

■■■ In the case presently before the court, plaintiffs have allegedly not received proper notice by the Welfare Department of which benefits would be terminated and the specific figures which support such terminations. Further, the plaintiffs have been subject to policies and procedures which are allegedly illegal in that they have not been promulgated under the Administrative Rulemaking Act, I.C. 4–22–2–1 et seq. Accepting the plaintiffs' allegations as true, they have already suffered injury per se in the violation of their due process rights, even without showing overt harm. *See, Hostrop v. Board of Jr. College, District No. 515*, 523 F.2d 569, 579 (7th Cir. 1975).

In addition to the per se injury of violation of the plaintiffs' due process rights, the plaintiffs have suffered from the actual as well as threatened loss of welfare benefits. The defendants contend that plaintiffs have not suffered any injury because they will retain their welfare benefits until their fair hearings take place. However, where an action is inevitable, "(o)ne does not have to await the consummation of threatened injury to obtain preventive relief." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974), *quoting Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 664, 67 L.Ed. 1117 (1923). Here, defendants' action in terminating plaintiffs' benefits, while delayed, is surely inevitable. Defendants have announced that the policies which they will apply in plaintiffs' fair hearings are mandatory, and argue that they are not even allowed to do what plaintiffs argue they must, that is, to promulgate rules on these policies. Thus, this "reasonable likelihood of future harm" to plaintiffs and proposed class provide another ground for standing. *See, Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1067 (7th Cir. 1976).

The plaintiffs in this case have met the burden of showing that they have a personal stake in the outcome of this case and thus have standing to bring this lawsuit.

### B. Exhaustion of State Administrative Remedies

The defendants also moved to dismiss this action on the basis that plaintiffs have failed to exhaust their administrative remedies and that exhaustion is a prerequisite to filing a federal case pursuant to 42 U.S.C., Section 1983, where the administrative remedies are adequate and appropriate. *See, Patsy v. Florida International University,* 634 F.2d 900 (5th Cir. 1981). The defendant contends that the court should not apply an inflexible rule with regard to exhaustion but should take an analytical approach in determining whether the administrative remedies are adequate and appropriate. *See, id.,* at 912, 913; *Secret v. Brierton,* 584 F.2d 823 (7th Cir. 1978). The defendants in the case now before the court maintain the administrative remedies are adequate and appropriate because of a state scheme of administrative and judicial review through the Administrative Adjudication Act.

The cases reveal, however, that exhaustion is not required in actions brought pursuant to 42 U.S.C., Section 1983, when a state welfare policy or practice is at issue, particularly when the question for the courts is whether such policy or practice conflicts with federal law or the Constitution. *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *see, Ellis v. Dyson,* 421 U.S. 426, 431, 95 S.Ct. 1691, 1694, 44 L.Ed.2d 274 (1975); *McNeese v. Board of Education for Comm. Unit. School Dist. 187, Cahokia, Illinois,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). This court has even held that exhaustion is not required in any Section 1983 case. *Mejia v. School City of Gary,* 415 F.Supp. 370, 373 (N.D.Ind.1976). Even applying defendants' analysis of the exhaustion requirement in Section 1983 cases, however, reveals that defendants' motion to dismiss for failure to exhaust is without merit. *Patsy* and *Secret* hold that in some cases, where the state administrative remedy may be completely adequate to vindicate plaintiffs' claims, exhaustion may be appropriate. However, exhaustion was not to be applied when it could not be demonstrated that the plaintiff could be afforded complete relief on her claims. Where the administrative remedy is futile or where the claim will be rejected, exhaustion will not be required. *Patsy v. Florida International University,* 634 F.2d at 904; *Secret v. Brierton,* 584 F.2d at 827; *see, Porter County Chapter of the Izaak Walton League of America, Inc. v. Costle,* 571 F.2d 359, 363 (7th Cir. 1978), *cert. den.,* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978).

In the case at bar, the plaintiffs are not challenging any particular budget decision of the Welfare Department but are rather challenging the Welfare Department policies and practices. The crux of the plaintiffs' complaint focuses on the legality of the defendant's policy contained in Implementation Letters # 1, # 2 and # 3, the constitutional and statutory adequacy of notice which plaintiffs received; and the state's decision not to promulgate rules with regard to the policies contained in Implementation Letters # 1, # 2 and # 3. Exhaustion in this case would be futile and could not result in relief of plaintiffs' claims. The hearing officers are required to apply the law as stated by the Welfare Department and cannot determine the legality of the law itself. Nor can the administrative process remedy any violations of due process which arise from the allegedly insufficient notice. Further, the administrative fair hearing procedure provides no mechanism for plaintiffs to require the Indiana Department of Public Welfare to properly promulgate rules under the Indiana Administrative Rulemaking Act, I.C. 4–22–2–1 et seq. Therefore, defendants' Motion to Dismiss for failure to exhaust administrative remedies is without foundation.

C. *Failure to State a Claim Upon Which Relief Can be Granted*

The defendants also moved to dismiss this complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6). The defendants contend that the case is clearly without merit in that there is an absence of law to support the claims of the plaintiffs, an absence of facts sufficient to make a good claim and the disclosure of same fact defeated the claim. *See,* 2A Moore's Federal Practice, paragraph 12.08 at 2271 (1981). Rule 12(b)(6), by its terms refers to statements in the complaint and extraneous matter such as affidavits, depositions or otherwise may not be introduced in support of or in resistance to a motion under this section.

If extraneous matters are presented to and considered by the court, the rule provides such motion shall be treated as a motion for summary judgment under Rule 56 and that all parties should be given the opportunity to present all material pertinent thereto. As this court has given the parties an opportunity to comment and present any extraneous matter they deem important to the decision in this case, this Rule 12(b)(6) motion will be treated as a motion for summary judgment under Rule 56.

D. *Adding Additional Party under Rule 19*

■ In the alternative to dismissing the suit under Federal Rules of Civil Procedure 12(b), the State seeks joinder of the Secretary of Health and Human Services as an indispensable party under Federal Rules of Civil Procedure 19. The defendants contend that unless the Secretary is made a party, the State may be subject to a substantial risk of incurring inconsistent obligations by reason of the Secretary's interest.

Rule 19(a) requires a determination of whether the absent party is needed in order to grant complete relief to existing parties or whether he claims an interest in the subject matter and is so situated that an adjudication in his absence will impair his ability to protect that interest or will subject existing parties to a risk of multiple litigation. Federal Rules of Civil Procedure 19(a); *see, International Union of Operating Engineers, Local 103, AFL–CIO, v. Irmscher & Sons, Inc.,* 63 F.R.D. 394 (N.D. Ind.1973). Thus, under Rule 19, a two step approach is required.

The first part of Rule 19 provides that an absent party shall be joined if complete relief cannot be granted to those already parties to the action in his absence. The purpose of this requirement is to insure that the interests of the existing parties in securing complete relief, and that of the public in avoiding repeated suits, is protected. *Irmscher, supra,* at 397. The term "complete relief" refers to relief as between the parties already parties and not as between the parties and the absent party whose joinder is sought. *Dyke v. Gulf Oil Corp.,* 601 F.2d 557 (Temporary Emergency Ct.Ap.1979); see, 3 A Moore's Federal Practice, paragraph 19.07(2), n. 5, p. 190128 (Supp. at 41). In this case, it is clear that relief can be given to the parties in the absence of the Secretary of Health and Human Services. The plaintiffs are challenging the policy and practices of the Indiana Department of Public Welfare and not any rule, regulation or action by the Secretary of Health and Human Services. Thus, the defendants have failed to satisfy this requirement of Rule 19(a).

The second part of Rule 19(a) requires that an absent party be joined if the absentee claims an interest in the subject matter of the action and disposition of the case in his absence may prejudice his interest or subject the existing parties to the substantial risk of multiple litigation. This determination is to be made in the context of the dispute which forms the basis of the case, *Irmscher, supra,* at 398; *Window Glass Cutters League of America, AFL–CIO v. American St. Gobain Corp.,* 428 F.2d 353 (3d Cir. 1970), and the court must focus on the practical consequences to the parties of nonjoinder rather than on the legal or res judicata effect. *Irmscher, supra,* at 398; *Haas*

*v. Jefferson National Bank of Miami Beach,* 442 F.2d 394, 398 (5th Cir.1971).

In the case presently before the court, the plaintiffs are challenging the defendants' action with regard to the implementation of the amendments to the Social Security Act concerning eligibility standards for AFDC recipients by Congress and the rules and regulations promulgated thereto by the Secretary of Health and Human Services. The plaintiff is not challenging the new law nor the rules and regulations enunciated by the Secretary with regard to the new law. Therefore, the Secretary has no vital interest in the specific issues raised in this litigation. The defendants contend, however, that the Secretary of Health and Human Services' vital interest in this litigation is the October 1, 1981 deadline mandate in implementing the amendments. The Secretary has not claimed such an interest nor must one be implied because the Act itself provides for a waiver of that deadline by the Secretary. Therefore, the defendants have not satisfied the requirements of Rule 19(a)(2)(i).

The defendants further maintain that the Secretary of Health and Human Services should be joined as an indispensable party under Rule 19(a)(2)(ii) because the State might be subject to a substantial risk of incurring inconsistent obligations by reason of his interest unless he is joined. The defendants contend that should the court grant the relief sought by the plaintiff in this case, the defendants would not be in compliance with the new law and the Secretary might begin proceedings which could result in Indiana's loss of federal financial participation. However, the defendants have not indicated what the likelihood is that the Secretary would institute such proceedings, that the proceedings would result in inconsistent obligations or that the State would not be able to readily obtain appropriate relief. Therefore, the defendants' alternative motion, to join the Secretary of Health and Human Services as an indispensible party under Federal Rules of Civil Procedure 19, is DENIED.

## V. MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction may not be granted unless plaintiffs seeking the injunction demonstrate: (1) a reasonable likelihood of success on the merits, (2) no adequate remedy at law, (3) that they will be irreparably harmed if the injunction does not issue and, (4) the relative hardships imposed on the parties weighs in their favor. *Banks v. Trainor,* 525 F.2d 837 (7th Cir. 1975), *cert. den.,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). Plaintiffs bear the burden of showing that each of these prerequisites to injunctive relief is satisfied.

### A. *Likelihood of Success on the Merits*

The plaintiffs have claimed four separate grounds for relief. First, the plaintiffs maintain that defendants' 150% rule is in conflict with Public Law 97–35, Section 2303, in that defendants used the adjusted or ratably reduced standard of need instead of the standard of need intended by Congress and that such rule is invalid under the Supremacy Clause of the Constitution of the United States. Second, the plaintiffs contend that defendants' termination of their Medicaid benefits is illegal insofar as the defendants have not given them timely and adequate notice in conformity with 42 U.S.C., Section 602(a)(4), 45 C.F.R., Section 205.10(a)(4), and the Due Process Clause of the Constitution of the United States. Plaintiffs' third claim is that defendants are implementing policies which have the force and effect of law without first having them promulgated, approved and filed as rules in conformity with Indiana Adjudication Act, I.C. 4–22–2–1.

Fourth, the plaintiffs maintain that the defendants' policy that Medicaid will not be extended for four months after termination of AFDC benefits is in conflict with federal law and thus invalid. The court will treat each claim separately on the merits.

### 1. *150% Rule*

Plaintiffs contend that Public Law 97–35 requires the defendants to use the total needs of the AFDC family in deter-

mining whether the family is eligible for assistance under the 150% test instead of the adjusted or ratably reduced standard of need as maintained by defendants. Section 2303 of Public Law 97–35 provides:

(The State plan must) provide that no family shall be eligible for aid under the plan for any month if, for that month, the total income of the family (other than payments under the plan), without application of paragraph (8), exceeds 150 per cent of the State's standard of need for a family of the same composition.

The decision on this issue therefore rests on what Congress intended by the language "State's standard of need."

The term "State standard of need" has been defined by case law and regulations to mean the actual standard of need computed by adding basic, special and shelter needs together. *See, e.g., Rosado v. Wyman*, 397 U.S. 397, 408–409, 90 S.Ct. 1207, 1215, 1216, 24 L.Ed.2d 132 (1970); *Roselli v. Affleck*, 508 F.2d 1277, 1279 (1st Cir. 1974); 45 C.F.R., Section 233.20(a)(2)(ii). After calculating the standard of need to determine eligibility for public assistance, the states may lower the level of benefits actually paid to recipients whereby recipients receive a fixed percentage of the standard of need rather than an amount equal to the standard of need. *See, e.g., Rosado, supra*, at 408–409, 90 S.Ct. at 1215, 1216; *Roselli, supra*, at 1279. This second figure, however, is not the State's standard of need.

In the Social Security Act Amendments of 1967, Congress required states to permanently update their standards of need which are used in determining eligibility for and the amount of AFDC benefits for an AFDC applicant or recipient. 42 U.S.C., Section 602(a)(23). In 1969, Indiana complied with this Congressional mandate, and updated its needs standard to the levels which are presently used in determining the total needs for an AFDC family.

The AFDC standard of need adopted by the Indiana Department of Public Welfare in 1969 allows a standardized amount for each of three types of needs: basic needs (including food, utilities, household supplies and other miscellaneous needs); special needs; and shelter needs (actual amount of rent excluding utilities up to $100.00 maximum). *See* 470 I.A.C. 10–3–6 *et seq.* In 1977, the Indiana Legislature determined that its payment levels for AFDC should not equal actual total needs of the AFDC recipient, but would only be 90% of the total need. I.C. 12–1–7–3.1. If the recipient's income after deductions was less than this need, ratably reduced, she would be entitled to AFDC and Medicaid. *See also, Mackey v. Stanton*, 586 F.2d 1126, 1128 fn. 1 (7th Cir. 1978).

Therefore, the term "state's standard of need" has a definite meaning, and refers back to the updated standard which was developed in response to the mandate of 42 U.S.C., Section 602(a)(23). The federal regulations implementing Section 602(a)(23) are clear that the term "standard of need" refers to the "total needs" as Indiana computes them, not to the "adjusted" or "ratably reduced" needs. They provide that when an AFDC plan is amended to adjust the State's standard to reflect changes in living costs pursuant to the 1967 mandate, the State may, in the event it is unable to meet the need in full, "make ratable reductions . . ." 45 C.F.R., Section 233.-20(a)(2)(ii). Thus, the federal use of the term "standard of need" refers to the need of the recipient prior to ratable reduction.

Furthermore, the interim regulations which interpret Section 2303 of Public Law 97–35 also use language which comports with the factors used to determine "total need" in Indiana rather than with the need as ratably reduced. In amendments to 45 C.F.R., Section 233.20(a)(3)(ii)(B) (46 Federal Register 46750, 46753, September 21, 1981), the Department of Health and Human Services uses the terms "State's need standard" and "State's payment standard," distinguishing the family's total needs as determined by adding basic, special and shelter needs together; and the amount on which the Indiana Department of Public Welfare will pay, called "adjusted" or "ratably reduced" needs. Furthermore, the regulations define "need standard" as "the

money value assigned by the State to the basic and special needs it recognizes as essential for applicants and recipients," again, a specific reference to the "total needs" of the AFDC recipient in Indiana without ratable reduction. 45 C.F.R., Section 233.-20(a)(3)(ii)(E), *id.* at 46764.

Finally, the Indiana statute which provides for ratable reduction distinguishes between the concept of a state standard of need and a standard of payment, as those terms are used in the new federal regulations. That statute provides that the Indiana Department of Public Welfare must apply "a percentage reduction of 90% to the total needs of aid to families with dependent children applicants and recipients in computing the aid to families with dependent children benefits payable." I.C. 12–1–7–3.1. Presumably, the legislature recognized that ratable reduction was not a means of determining the recipient's standard of need, but a means to reduce that standard to a level which the legislature was willing to provide payment for. Thus, plaintiffs have shown that they have a reasonable likelihood of success on the merits of this claim for relief.

### 2. *Adequate Notice*

Plaintiffs second claim for relief is that the notices given by defendants' violated 42 U.S.C., Section 602(a)(4), 45 C.F.R., Section 205.10(a)(4), and the Due Process Clause of the Constitution of the United States in that they were not adequate and that defendants' action based on the allegedly nonconforming notices was illegal. The plaintiffs specifically contend that the notices fail to indicate the information on how their needs were calculated, and what income they are assumed to have. Plaintiffs further contend that the defendants' use of these notices has denied them the opportunity to understand, determine the accuracy of, and make knowledgeable decisions as to whether they should challenge the defendants' actions. Finally, plaintiffs contend that the notice fails to inform recipients that Medicaid benefits will also be terminated. These two allegations will be treated separately.

### a. *Absence of Calculations*

Defendants argue that it was not necessary to provide calculations in the notice. They maintain that the facts that plaintiffs (1) were given a precise reason for rebudgeting, (2) have a right to see their entire case file, (3) can talk to their caseworkers about the termination of AFDC benefits and may appeal and preserve their AFDC awards during the appeal process fulfill the due process requirements of notice. Defendants further contend that because Medicaid is an automatic benefit for those eligible for AFDC and the State may not require separate application for Medicaid, they were not required to give AFDC recipients separate notice of Medicaid termination.

The notices in question in this case were in response to a change in federal law relating to welfare benefits and therefore Section 205.10(a)(4)(iii), Code of Federal Regulations 45, applies to this case. The court will not specifically address compliance with those regulations because the court construes the code regulations as requiring compliance with the requirements of due process.

In determining the adequacy of notice in this action, the court will rely on three decisions from the Seventh Circuit Court of Appeals: *Vargas v. Trainor*, 508 F.2d 485 (7th Cir. 1974), *cert. den.*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975); *Banks v. Trainor*, 525 F.2d 837 (7th Cir. 1975), *cert. den.*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); and *Dilda v. Quern*, 612 F.2d 1055 (7th Cir. 1980), *cert. den.*, 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980).

In *Vargas*, aged, blind and disabled recipients of aid from the Illinois Department of Public Aid under Title XVI of the Social Security Act, 42 U.S.C., Section 1381–85, filed suit to challenge the sufficiency of the notice used to inform them of reductions or terminations of benefits. The Court of Appeals held that the notice of proposed termination or reduction in aid did not comport with procedural due process because it did

not give reasons for the proposed action. 508 F.2d at 489. In reaching that decision, the court rejected the defendants' contention that the notice met due process standards because it advised the recipient that he could learn the reason for the proposed reduction or termination of benefits by contacting his caseworker. *Id.*

In *Banks*, food stamp recipients in Illinois filed suit to challenge the adequacy of the notice informing them of reductions of food stamp benefits brought about by a change in the method used for calculating benefits. That change, like the changes in the case at bar, was triggered by a change in the law. Plaintiffs sought and obtained a preliminary injunction from the district court enjoining defendants from reducing the food stamp benefits of the members of the plaintiff class "until such time that the members of the plaintiff class are provided with adequate advance notice of the reasons for the proposed reduction, including a full statement of all income and deductions therefrom, taken into account in determining net food stamp income." The defendant attempted to comply with the district court's order by conducting a face-to-face interview with each food stamp recipient affected by the change in the law to secure and to calculate food stamp income under the new method. After the recipient completed a two-page application for food stamps, the caseworker computed the recipient's income and deductions to arrive at a net food stamp income figure. Those members of the plaintiff class whose food stamp benefits were to be reduced on the basis of information obtained in the interview were then to be sent a notice containing the following statement:

> Your eligibility for food stamps has been redetermined and your net food stamp income has been computed. Your purchase requirement will be based on the net income basis of issuance as required by federal regulation. (7 C.F.R. 271.3).

Upon motion of the plaintiffs, the district court also found this notice insufficient.

On appeal, the Seventh Circuit Court of Appeals affirmed. It stated:

The notices sent to this class did not contain a breakdown of income and deductions so that the recipients could determine the accuracy of the computations. Since the notices do not inform recipients of what factors are relevant in determining net food stamp income, the plaintiff class cannot inform caseworkers of expenditures that should be used. Similarly, the plaintiff class was not informed by chart or otherwise of the allotment and purchase prices for different size households based on their food stamp income, so that members of the class can ascertain whether they are receiving the correct amounts of coupon allotments. Both *Goldberg v. Kelly*, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970), and *Vargas* require detailed notice of adverse action as a protection against agency error and arbitrariness. Because the calculation of food stamp benefits under the income method requires an individualized determination of income, expenses and deductions for each recipient, due process requires full and adequate prior written notice. 525 F.2d at 842.

In *Dilda*, welfare recipients brought suit to challenge the practice of the Illinois Department of Public Aid of reducing or cancelling benefits under Title IV of the Social Security Act, 42 U.S.C., Section 601 *et seq.*, through rebudgeting without notifying them of the method by which the revised reduction or cancellation was calculated. The district court found the defendants' original notice inadequate under the due process clause for failing to include an explanation of how and why the plaintiffs' AFDC grant was recomputed.

On appeal, plaintiffs contended that the defendants' notice failed to comport with certain federal regulations and due process. They argued that the defendants' notice should have included a copy of the worksheets upon which the defendants based their decisions. The Court of Appeals agreed with the plaintiffs. Even though the notice stated the ultimate reason for the reduction or cancellation of benefits, the Court of Appeals found it did not com-

port with due process. The notice's major flaw, according to the court, was its failure to provide the recipient with a breakdown of income and allowable deductions. Accordingly, it ordered defendants to include photocopies of their work papers with the notices informing recipients of a reduction or termination of benefits.

In the present case, plaintiffs maintain that the notice fails to comport with due process in that the defendants failed to include calculations on which AFDC eligibility was determined applying the 150% rule. Section 2303 of Public Law 97–35 excludes from benefits those persons whose total income exceeds 150% of the State's standard of need for a family of the same composition. If an AFDC recipient had his aid terminated as a result of this provision, his notice from the defendants stated "Your total gross income is more than 150% of your adjusted needs in your AFDC budget. (Section 2303, Budget Act of 1981)."

Plaintiffs contend the notice does not contain any information for the recipients to determine why they are no longer eligible for AFDC benefits nor any information upon which they could meaningfully determine whether the Department's actions were appropriate. The court finds the plaintiffs' objections valid and therefore finds the plaintiffs have demonstrated a reasonable likelihood of success on their claim that the notice pertaining to the AFDC eligibility decision based on the 150% rule fails to comport with due process.

b. *Termination of Medicaid Benefits*

 The plaintiffs also allege that the notice is defective for failure to notify plaintiffs of the fact that they will lose their Medicaid benefits if they are terminated from the AFDC program. The defendants maintain that they did not have to give notice because the Medicaid benefits were layered on top of AFDC benefits.

Under Indiana law, AFDC recipients are automatically entitled to Medicaid benefits. I.C. 12–1–7–14.9. The layering of these two programs has been in existence since 1969. See, Acts of 1969, C. 274, Section 2.

Automatic entitlement to Medicaid following a determination of eligibility under AFDC is a requirement of federal regulation. 42 C.F.R., Section 435.909. Further, the State is prohibited from requiring a separate application for Medicaid. *Id.* The defendants therefore argue that they are not required to notify AFDC recipients of the Medicaid termination which occurs due to the termination of AFDC benefits. The plaintiffs contend, however, that the legal requirements of due process, federal statutes and regulations require notice.

The defendants' actions with regard to termination or adjustment of AFDC benefits was in response to a change in federal law. That law contained no provisions with regard to the determination of Medicaid eligibility for AFDC recipients. Therefore, the law remained unchanged with regard to the layering effect of Medicaid and AFDC benefits. Due to this layering effect, plaintiffs cannot challenge the loss of Medicaid benefits per se but rather only through the procedure of challenging the termination of their AFDC benefits. That fact alone, however, does not excuse defendants from complying with the law.

Federal regulation, 42 C.F.R., Section 435.919, provides that the Indiana Department of Public Welfare must give Medicaid recipients timely and adequate notice of proposed action to discontinue, terminate or suspend Medicaid eligibility and that such notice must meet the requirements of 42 C.F.R., Section 431.210. A notice is adequate under that section if it contains a statement of what action the agency intends to take, the reasons for the intended action, the specific regulations or change in federal or state law that requires the action, and an explanation of the individual's right to request an evidentiary hearing if one is available or in cases of an action based on a change in law, the circumstances under which a hearing will be granted and an explanation of the circumstances under which Medicaid will be continued if a hearing is requested.

The only language regarding Medicaid in the notices sent to recipients concerning

AFDC benefits was the following: "The Department of Public Welfare can no longer issue checks for amounts less than $10.00. (Section 2316, Budget Act of 1981) YOU WILL CONTINUE TO RECEIVE MEDICAID." The plaintiffs have therefore shown a reasonable likelihood of success on the merits of this claim for relief.

### 3. *Administrative Procedure*

■ Plaintiffs last claim for relief is that all the policies articulated in Implementation Letters # 1, # 2 and # 3 are null and void because the defendants have not promulgated them, gotten them approved and filed them in conformity with Indiana's Administrative Adjudication Act, I.C. 4–22–2–1 *et seq.* Plaintiffs maintain that the policies outlined in the letters are "rules" within the meaning of the Act in that the policies have the effect of law or interpreting, supplementing or implementing Public Law 97–35. See, I.C. 4–22–2–3. The defendants maintain that Public Law 97–35 is self-executing and does not require interpretation or exercise of discretion prior to its having any effect.

In determining whether rulemaking is required, the court must determine whether the statute in question contains a broad grant of administrative power or is sufficiently precise in its terms so as to not require regulations to lay out its terms. The court will consider the policies outlined in Implementation Letters # 1, # 2 and # 3 separately to determine whether the applicable section of Public Law 97–35 required discretion and interpretation prior to its having any effect.

Implementation Letter # 1 contains two basic items contained in Public Law 97–35, namely that no AFDC payments may be made for amounts less than $10.00 and the application of the 150% rule. There is no dispute that the first item does not require interpretation prior to its being effective. The application of the 150% rule is, however, a disputed issue.

Section 2303 of Public Law 97–35 provides, "that no family shall be eligible for aid under the plan for any month if, for that month, the total income of that family (other than payments under the plan), . . . exceeds 150 percent of the State's standard of need for a family of the same composition." The plaintiffs maintain that the defendants made several interpretations of this provision in outlining the policies in Implementation Letter # 1, namely, (1) the "State standard of need" to mean Indiana's ratably reduced standard of need; (2) and the earning of various individuals to be included in the total gross income. The "State's standard of need" requires no interpretation prior to its being effective and does not require the rulemaking procedures to be followed prior to its implementation as noted earlier in this opinion. The second interpretation of what constitutes the total income of the family is not as clear on its face. The defendants stated in Implementation Letter # 1 that the total gross earned income included income from AFDC family members who were under age 14 and those who were students. The plaintiffs maintain that the federal regulations provide that the earnings of full-time students or part-time students who do not have a full-time job are to be disregarded in determining eligibility and that the defendants' policies are therefore in conflict with the federal regulations. Implementation Letter # 3, however, states what earned income is to be disregarded and includes the exclusion of students' income in determining eligibility. Therefore, plaintiffs' arguments with regard to this issue are without foundation.

Implementation Letter # 2 concerns stepparent income attributed to the AFDC child reflect the practical application and language of Public Law 97–35 and thus do not require promulgation. First, the "State's standard of need" has been clarified earlier in this opinion. Second, the statute provides for excluding the amount for State's standard of need from the stepparent's income which includes shelter expenses. If the stepparent is entitled to the $100.00 maximum, the statements of the defendants in Implementation Letter # 2 do not prohibit it. Further, the statute is

written in terms of earned income. Therefore, the statements by defendants regarding unearned income, including Social Security, are merely explaining the treatment of unearned income from language in the statute and do not involve interpretation requiring promulgation. Finally, plaintiffs' contention regarding the verification of amounts paid for stepparent dependents are totally without merit. The requirement of verification has absolutely nothing to do with determining eligibility for AFDC benefits, but rather is purely procedural within the Department of Public Welfare and does not require promulgation.

The first issue considered in Implementation Letter # 3 concerns the $30.00 plus ⅓ disregard of income. The plaintiffs maintain the defendant interpreted this statute by applying it only if the AFDC recipient is otherwise eligible. Public Law 97–35, Section 2301 amending § 402(a)(8)(B)(ii)(I), however so provides and thus does not require promulgation. The next issue contained in Implementation Letter # 3 that the plaintiffs maintain requires promulgation is the work requirement registration. The statute provides that the caretaker relative of a child under the age of six who is personally providing care with only very brief and infrequent absences from the child is exempt from work requirements. The defendants then gave two examples of cases which this provision affects. Those examples, however, are not interpretations of the law and thus do not require promulgation. The last policy of the defendants contained in Implementation Letter # 3 questioned by plaintiff is the deeming of income and resources and income to an alien from his or her sponsor. The plaintiffs maintain that the statute requires that the standard of need calculation be based upon the standard in the State considering providing assistance to the alien rather than the State where the sponsor lives. The statute provides that the amount of earned and unearned income of the sponsor and sponsor's wife shall be reduced by an amount equal to the sum of "the cash needs standard established by the State under its plan for a family of the same size and

composition ..." Public Law 97–35, Section 2320 (adding Section 415 to the Social Security Act). The language of this section does not support plaintiffs' allegation and thus does not require interpretation.

The plaintiffs' third claim for relief, the alleged failure of defendants to promulgate the policies contained in Implementation Letters # 1, # 2 and # 3 as rules is not supported. Therefore, plaintiffs have failed to demonstrate a reasonable likelihood of success on the merits of this claim so as to entitle them to injunctive relief.

### 4. *Four Month Medicaid Eligibility*

The plaintiffs maintain that the defendants' policy that Medicaid will not be extended for four months after AFDC benefits are terminated due to increased income is illegal in that it conflicts with 42 U.S.C., Section 1396a(e), and is thus invalid under the Supremacy Clause of the Constitution of the United States. The plaintiffs contend that Implementation Letter # 3 sets forth this policy by virtue of the following sentence: "There will be no four (4) month extension of Medicaid coverage because such discontinuance is not a result of increased earnings, but rather a change in Federal law."

Section 1396a(e), 42 U.S.C., provides that any person who is terminated from AFDC because of an increase in earned income and who received AFDC in at least three of the six months immediately preceding ineligibility, shall remain eligible for four calendar months following the month in which the person became ineligible. This federal law was not amended in any way by the recent Congressional amendments to the AFDC/Medicaid statutory framework.

The sentence relied on by plaintiffs appears to violate the above provision and plaintiffs maintain that the evidence supports that conclusion. The sentence, however, was taken out of context and when read in light of the surrounding language does not on its face violate Section 1396a(e). Further, the evidence regarding this issue appears to indicate that the application of

the 150%, a change in federal law, is the basis for discontinuance and not the fact that the earned income of the recipient increased. Therefore, the plaintiffs have failed to demonstrate a reasonable likelihood of success on the merits of this issue.

### B. Irreparable Harm—No Adequate Remedy at Law

The plaintiffs maintain that they are suffering and will continue to suffer irreparable harm as a result of the allegedly illegal actions of defendants. Plaintiffs specifically maintain that they are unable to meet their basic subsistence needs, including medical expenses, because of their allegedly wrongful termination of AFDC and Medicaid benefits. The defendants contend that the plaintiff, Patricia Sue Jones, has not suffered irreparable injury because she has continued to receive AFDC and Medicaid benefits. The defendants further contend that plaintiffs have an adequate remedy at law, namely, the appeal process provided by 45 C.F.R., Section 205.10.

Irreparable harm, as that term is used in determining the availability of preliminary relief, is certain to result in this case. Where a rule or policy reduces or terminates a basic needs grant or Medicaid benefits, irreparable harm is shown. See, *Gaither v. Sterrett*, 346 F.Supp. 1095 (N.D. Ind.1972); *McLean v. Mathews*, 466 F.Supp. 977 (S.D.N.Y.1976); *Berk v. Larid*, 429 F.2d 302 (2d Cir. 1970). The plaintiffs and class may not be able to meet their basic needs or obtain necessary medical services without their AFDC and Medicaid grants, and thus will suffer irreparable harm if an injunction is not granted.

Nor do plaintiffs have an adequate remedy at law. The defendants maintain that the plaintiff class can appeal their reduction or termination of AFDC and Medicaid benefits through the appeal process provided by statute. That argument, however, is without foundation in this case. The plaintiffs are challenging the actions and policies of the defendants, not a particular budget calculation which the appeal process could remedy. Further, a monetary award of money in the future will not remedy the lack of basic needs and medical attention required now. Therefore, the plaintiffs have no adequate remedy at law.

### C. Balancing of Harm

Another factor to be considered is the relative hardships on the parties if an injunction was issued. The AFDC recipients absent relief would be exposed to the hardship of being denied basic needs and essential medical benefits. The State has made no showing of hardship to it other than providing AFDC and Medicaid benefits pending elimination of the use of ratable reduction in calculating AFDC eligibility under the 150% rule, complying with due process notice requirements and properly promulgating the necessary rules to implement the new federal law. The balance of hardships therefore tips toward plaintiffs if relief were denied.

### VI. ORDER

IT IS HEREBY ORDERED:

A. This action may proceed as a class action. The class consists of all AFDC and Medicaid recipients who have had or will have their AFDC and Medicaid benefits reduced or terminated pursuant to the policies of the defendants contained in their Implementation Letters # 1, # 2 and # 3, dated September 1, 4 and 8, 1981, respectively, and all persons in the State of Indiana who have applied or will apply for AFDC benefits and whose applications have been or will be denied or whose benefit grants will be diminished below what they otherwise would be because of the policies of defendants contained in their Implementation Letters # 1, # 2 and # 3, dated September 1, 4 and 8, 1981, respectively.

B. The "150% rule" as stated in Implementation Letter # 1 is invalid under the Supremacy Clause of the Constitution of the United States in that it is in conflict with Section 402(a)(18) of the Social Security Act, Public Law 97–35, Section 2303. The "State's standard of need" as that term is used in Section 2303, Public Law 97–35,

means the total needs of the AFDC family as updated in 1969 and does not mean the ratably reduced standard of need used to determine the amount of the AFDC benefit payment.

C. The termination of the plaintiffs' and class' AFDC and Medicaid benefits were invalid in that they did not receive adequate notice in conformity with 42 U.S.C., Section 602(a)(4), 42 C.F.R., Section 205.-10(a)(4), 42 C.F.R., Section 431.210, and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

D. The statements of policy contained in Implementation Letters # 1, # 2 and # 3 were not rules within the meaning of the Indiana Administrative Rulemaking Act and do not require promulgation to be effective.

E. Defendants, their agents, employees and successors in office are enjoined until further order of this court from using the ratably reduced standard of need in determining AFDC eligibility.

F. Defendants, their agents, employees and successors in office are enjoined from failing to take all steps necessary to restore immediately to plaintiffs and their class, AFDC and Medicaid benefits they were receiving or would have received prior to the implementation of defendants' policy regarding the application of the 150% rule. Within 30 days of the issuance of this order, defendants shall restore all AFDC and Medicaid benefits to the plaintiffs and their class, including October, 1981, that they would be and are entitled to under the correct application of the 150% rule. Defendants shall also transmit the necessary notices to the plaintiffs and their class regarding termination of their AFDC and Medicaid benefits which shall be adequate and contain all the information required by law.

G. It is further ordered that plaintiffs need not furnish any bond or security on good cause shown, by reason of their indigency.