Mary WILLIAMSON, et al., Plaintiffs,

v.

Alan GIBBS, et al., Defendants and
Third-Party Plaintiffs,

v.

Margaret HECKLER, Secretary of
Health and Human Services,
Third-Party Defendant.

No. C83–164R.

United States District Court,
W.D. Washington.

March 28, 1983.

William Rutzick, Stephen Maddox, Evergreen Legal Services, Seattle, Wash., for plaintiffs.

Charles Murphy, Asst. Atty. Gen., Olympia, Wash., for defendants and third-party plaintiffs.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING CLASS CERTIFICATION AND PRELIMINARY INJUNCTION

ROTHSTEIN, District Judge.

This matter having come on for hearing on March 18, 1983, upon plaintiffs' motions for preliminary injunction and class certification, plaintiffs appearing by their counsel William Rutzick and Stephen Maddox, and defendant Alan Gibbs appearing by his counsel, Charles Murphy, and the court having considered the affidavits and other evidence in this matter, having heard the arguments of counsel and having considered the views of Third-Party Defendant Secretary of Health and Human Services as reflected by the Secretary's Brief dated December 17, 1982 to the United States Court of Appeals for the Ninth Circuit in *Turner v. Woods,* Nos. 82–4552, 82–4566, 82–4599, the court makes the following findings of fact and conclusions of law:

1. With regard to plaintiffs' motion for class certification, which was not opposed by defendant, it is hereby found and concluded that:

(a) The class is so numerous that joinder of members is impracticable;

(b) This action presents questions of law and fact common to the class;

(c) The claims of the representative parties are typical of the claims of the class and the representatives of the class will fairly and adequately protect the interests of the class; and

(d) The defendant has acted on grounds generally applicable to the class, thereby making appropriate preliminary and final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

2. The balance of hardships tips sharply in favor of plaintiffs and class members. Class members have suffered and, unless defendant is enjoined, will continue to suffer irreparable injury because of the operation of the defendant's policy of calculating need and corresponding grant amount by counting gross income rather than gross income minus mandatory payroll deductions.

3. Class members are suffering irreparable injury because of the defendant's policy of counting as income federal income tax returns received in 1983 based upon earnings received and counted as income by defendant during 1982 for the purposes of establishing need and grant amount for Aid to Families with Dependent Children (AFDC) and Refugee Assistance (RA) benefits.

4. Plaintiffs have a substantial likelihood of success on their claims (a) that the defendant should use gross income minus mandatory payroll deductions as "income" for the purposes of determining need and grant amount for benefits, and (b) that the defendant, having included income tax withholdings as income for AFDC and RA purposes during all of 1982 and up to the present, should not again count, as income, income tax refunds received for the same periods.

5. Section 402(a)(7) of the Social Security Act, 42 U.S.C. § 602(a)(7), provides that the administering state agency shall, "in determining need, take into consideration any ... income and resources [other than AFDC itself] of any child or relative claiming [AFDC] benefits."

6. The federal statutory provisions that govern the AFDC program do not define the word "income" as used in Section 402(a)(7)(A) [42 U.S.C. § 602(a)(7)] (1982).

7. As evidenced by the exhibits of record, the word "income" as used in 42 U.S.C. § 602(a)(7) has been interpreted as gross income less mandatory deductions since that section was enacted in 1939. These exhibits include the December 20, 1940 Policy Statement of the Social Security Board, reprinted in Guide to Public Assistance Administration § 202, at pp. 1–2 (1942), and Public Assistance Report No. 43 (1961). This interpretation has continued to the present and is currently found at 45 C.F.R. § 232.20(a)(3)(ii)(D), as *amended* in 47 Fed. Reg. 5648, 5675 (1982).

8. The 1962 amendment to 42 U.S.C. § 602(a)(7), P.L. 87–543, 76 Stat. 185, 188 (1962) required that all states deduct from income any expenses reasonably attributable to the earning of that income (work expenses). Both the amendment's legislative history and the contemporaneous administrative interpretation of that amendment defining the scope of the work expenses disregards (including Part IV, § 3140 of the Handbook of Public Assistance Administration (2/26/63)) made no mention of mandatory payroll deductions as work expenses. These materials support the position that the existing definition of income as used in 42 U.S.C. § 602(a)(7) was not changed by that amendment. The practice that developed after 1962 of states referring to mandatory payroll deductions as "work expenses" appears to have been for administrative convenience, and had no practical significance at that time. This practice does not support the conclusion that such payroll deductions became "work expenses" rather than being excluded from

income for the purpose of determining need.

9. *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974) does not lead to the conclusion that by 1974 "income" for purposes of 42 U.S.C. § 602(a)(7) was no longer exclusive of mandatory payroll deductions. It is clear that the Supreme Court did not intend to make an important change in the definition of "income" particularly since that definition was not relevant to the dispositive issue in *Shea.*

10. The regulation which interprets "earned income", 45 C.F.R. § 233.-20(a)(6)(iv), *as amended* in 47 Fed.Reg. 5648, 5676 (1982), was originally adopted to interpret statutory provisions contained in 42 U.S.C. § 602(a)(8) and not § 602(a)(7). This regulation does not change the interpretation of income as presently contained in 45 C.F.R. § 233.20(a)(3)(ii)(D) (1982). These two regulatory provisions are reconcilable in that they call for the states to use "earned income" in determining disregards and "net income" in determining need. However, to the extent not reconcilable, the former provision interpreting "earned income" does not call for a modification of the longstanding interpretation of "income" contained in 45 C.F.R. § 233.20(a)(3)(ii)(D), particularly since the two phrases are different and serve different purposes within the statutory and regulatory framework of the AFDC program.

11. The legislative history of the AFDC amendments of the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97–35, § 2302, 95 Stat. 357, 844–845, does not indicate that Congress intended to make a radical change in the definition of "income" in § 602(a)(7). As a result, the definition of "income" established since 1939, that of gross income less mandatory payroll deductions, continues in effect.

12. This longstanding and unchanged definition of "income" in 42 U.S.C. § 602(a)(7) furthers the purposes of the AFDC program, particularly the purpose of encouraging recipients to secure and retain employment.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

(1) This action is certified as a class action on behalf of the class defined as follows:

All persons in the State of Washington (a) who have applied or will apply for Aid to Families with Dependent Children (AFDC) or Refugee Assistance (RA) benefits, (b) who have been or will be employed during the period for which they have applied for AFDC or RA, (c) whose earnings are or were subject to mandatory federal or other income tax withholding and/or F.I.C.A., (d) whose AFDC or RA benefits have been or will be denied, reduced or terminated on or after the ninetieth day prior to the filing of this action due to defendant's policy of counting F.I.C.A., federal income or other income taxes mandatorily deducted from an individual's gross earnings as income available to those persons in computing the amount of their monthly AFDC or RA checks, and (e) who would be eligible for AFDC or RA or for an increased amount of AFDC or RA but for the policy of defendant challenged in this action.

(2) Preliminary Injunction is GRANTED for Plaintiffs and class members. Effective immediately, defendant Gibbs, his employees, agents, successors and assigns and those in active concert therewith are hereby preliminarily enjoined (a) from including mandatory payroll deductions such as federal and Social Security taxes (F.I.C.A.), within the definition of "income" in interpreting and determining "need" as used in Section 602(a)(7) of Title 42 of the United States Code for purposes of any AFDC or RA benefits issued on or after the date of this Order (it being understood that this will require the issuance of supplemental warrants for the month of April 1983), and (b) from treating the following income tax refunds (received or to be received by applicants for, or recipients of, AFDC or RA) as income for purposes of determining the allowance and amount of AFDC or RA benefits issued on or after the date of this order (it being understood that this will require the issuance of supplemental warrants for the month of April, 1983):

(1) Refunds attributable to income tax withholdings that were included as income in determining the allowance or amount of AFDC or RA benefits granted the recipients of such funds.

IT IS FURTHER ORDERED that the parties attempt to agree on the notice to be given to class members concerning this matter. If agreement is not reached on this matter within 20 days from the date of this Order, plaintiffs may move, on or before May 1, 1983, for an order on this issue. Christopher Pickrell, AUSA, has informed the undersigned counsel that he approves this order as to form.