Sana SCHROEDER, et al., Plaintiffs,

v.

Leo HEGSTROM, et al., Defendants and Third-Party Plaintiffs,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Third-Party Defendant.

Civ. No. 84–289–PA.

United States District Court, D. Oregon.

June 13, 1984.

Richard H. Hart, Jr., Roberta J. Lindberg, Lane County Legal Aid Service, Eugene, Or., Amy Veranth, Michael H. Marcus, Legal Aid Service, Portland, Or., for plaintiffs.

Dave Frohnmayer, Atty. Gen., William F. Gary, Deputy Atty. Gen., Salem, Or., for defendants and third-party plaintiffs.

Charles H. Turner, U.S. Atty., Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., for third-party defendant.

## OPINION AND ORDER

PANNER, District Judge.

Plaintiffs are welfare families who challenge certain policies and practices by which eligibility and benefits are determined under Oregon's Aid to Dependent Children (ADC) program. Defendants are Leo Hegstrom, Director of the Department of Human Resources of the State of Oregon, and Keith Putnam, Administrator of the Adult and Family Services Division of the State of Oregon (AFS). Plaintiffs allege that the challenged policies violate federal statutes and regulations, and the due process guarantee of the fourteenth amendment. They seek declaratory and injunctive relief.

Defendants have filed a third-party complaint against Margaret Heckler, Secretary of the United States Department of Health and Human Services. The Department of Health and Human Services administers the federal Aid to Families with Dependent Children (AFDC) program. The third-party complaint seeks to enjoin the Secretary from refusing to allow and pay federal financial participation moneys to defendants/third-party plaintiffs pursuant to a

preliminary injunction entered by this court against defendants/third-party plaintiffs. The Secretary has not filed an answer to the third-party complaint, and this matter has not been briefed by the parties. I therefore order the third-party action bifurcated from the principal case. Trial on the merits will be held at a later date.

Plaintiffs make three claims. First, they contend that defendants' policy and practice of counting plaintiffs' mandatory payroll deductions as income in determining ADC eligibility and payment levels violates Congressional mandates contained in 42 U.S.C. §§ 601, 602(a)(7), and 602(a)(8). This claim has been designated the "earned income" claim. Second, plaintiffs contend that defendants' policy and practice of counting plaintiffs' income tax refunds as income for purposes of ADC violates 42 U.S.C. § 602(a)(7), 45 C.F.R. § 233.-20(a)(3)(ii)(D) and (E), and the due process guarantee of the fourteenth amendment, when those funds have been previously counted as income when withheld from earnings. This claim has been referred to as the "double-counting" claim. Third, plaintiffs assert that defendants do not provide adequate notice of proposed adverse action on ADC benefits due to receipt of earned income, nor an adequate opportunity for hearing before benefits are reduced, suspended, or terminated. Plaintiffs contend defendants' current procedures violate 42 U.S.C. § 601, *et seq.*, 45 C.F.R. §§ 205.10 and 233.37, and the due process clause of the fourteenth amendment. This claim has been designated the "notice and hearing" claim.

On March 30, 1984, I granted plaintiffs' motion for class certification. I certified two overlapping classes of plaintiffs. The "earned income" class is comprised of all ADC applicants or recipients with a family member who has or will have earned income. The "double-counting" class is comprised of all ADC applicants or recipients with a family member who has received or will receive a refund of income taxes withheld in 1983 which taxes were considered in determining their ADC eligibility or benefits at the time the taxes were withheld.

I also granted a preliminary injunction enjoining defendants from counting for ADC purposes income tax refunds received by plaintiffs on or after April 1, 1984, or finally determined as income by AFS on or after April 1, 1984, where the money, in the form of mandatory payroll deductions, had been previously treated as income in the ADC program.

Plaintiffs now seek final injunctive and declaratory relief on their earned income, double-counting, and notice and hearing claims. A trial on the merits was held on April 18, 1984. For the reasons set forth below, I hold that plaintiffs are entitled to prevail on each of their three claims. This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## DISCUSSION

### I. *Earned Income Claim.*

Aid to Families with Dependent Children is a jointly funded federal-state public assistance program authorized by the Social Security Act. Participating states give assistance to needy families that include a dependent child. A portion of the funds expended by the state is reimbursed by the federal government. In return, states are required to administer their programs according to federal statutes and Department of Health and Human Services regulations. *See* 42 U.S.C. §§ 601–07; *Turner v. Prod,* 707 F.2d 1109, 1111 (9th Cir.1983), *cert. granted sub nom., Heckler v. Turner,* —— U.S. ——, 104 S.Ct. 1412, 79 L.Ed.2d 739.

In determining an AFDC family's benefits, state programs are required to take into account the amount necessary for essentials, the level of benefits the state is willing to pay, and the family's income and resources. Pursuant to long-standing administrative policy, only income actually available was considered in calculating a family's need. Under this interpretation, funds mandatorily deducted from a worker's paycheck for such items as federal and

state income taxes were not treated as income. *See Turner*, 707 F.2d at 1114–16.

In 1981, Congress passed the Omnibus Budget Reconciliation Act (OBRA), bringing significant changes to the AFDC program. The purpose of OBRA was to reduce federal spending. "Views of the Committee on the Budget," Senate Report No. 97–139 (June 17, 1981), *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 397, cited in *Turner*, 707 F.2d at 1111. OBRA amended 42 U.S.C. § 602(a)(7) and § 602(a)(8), the provisions that describe the method by which state programs are to determine a family's need for AFDC benefit purposes. The pertinent portions of the statute, as amended, provide:

A state plan for aid and services to needy families must ...

. . . . .

(7) except as may be otherwise provided in paragraph (8) ... provide that the State agency—

(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children. . . .

. . . . .

(8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the state agency—

(i) ...; (ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children ... the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month); (iii) shall disregard from the earned income of any child, [or] relative ... an amount equal to expenditures for care in such month for a dependent child ... receiving aid to families with dependent children and requiring such care for such month, to the extent that such

amount (for each such dependent child ...) does not exceed $160 ....

*Turner*, 707 F.2d at 1113.

The enactment of OBRA raised the question whether Congress intended to change the definition of "income" in section 602(a)(7) from income actually available to gross income, by subsuming tax withholdings under the standardized work expense disregard of section 602(a)(8)(A)(ii). There is a division among the circuits on this issue.

In *Turner v. Prod*, 707 F.2d 1109 (9th Cir.1983), *cert. granted sub nom.*, *Heckler v. Turner*, — U.S. —, 104 S.Ct. 1412, 79 L.Ed.2d 739, the Ninth Circuit concluded that the pertinent legislative and administrative history demonstrates that "income" for the purposes of section 602(a)(7) should be construed as income net of mandatory payroll deductions such as local, state, and federal income taxes. 707 F.2d at 1124. *Turner* is currently on appeal to the United States Supreme Court. The parties in this case have stipulated that the California policy at issue in *Turner* is essentially the same as the policy at issue here.

Several courts have reached the same conclusion as the Ninth Circuit: *Nishimoto v. Sunn*, 561 F.Supp. 692 (D.Hawaii 1983); *Williamson v. Gibbs*, 562 F.Supp. 687 (W.D.Wa.1983); *RAM v. Blum*, 564 F.Supp. 634 (S.D.N.Y.1983); and *Clark v. Helms*, 576 F.Supp. 1095 (D.N.H.1983).

The First, Third, and Fourth circuits have reached a contrary result, holding that state programs may now consider mandatory payroll deductions within the definition of "income" for purposes of determining AFDC eligibility and benefits. *Dickenson v. Petit*, 728 F.2d 23 (1st Cir. 1984); *James v. O'Bannon*, 715 F.2d 794 (3rd Cir.1983); *Bell v. Massinga*, 721 F.2d 131 (4th Cir.1983).

The opinions in *Turner* and *James* thoroughly set forth the disparate views. Although the analysis in *James* is thoughtful and well-reasoned, it is appropriate that I follow the holding of the Ninth Circuit in

*Turner* pending resolution of the issue by the United States Supreme Court. Thus, I hold that plaintiffs are entitled to injunctive relief on their earned income claim. I further hold that if defendants choose to use standardized monthly tables to estimate tax withholdings, plaintiffs must be provided with notice of the use of such tables, and an opportunity to rebut the presumptions incorporated within them. I also hold that defendants may not count as income union dues where such dues are mandatorily withheld from wages pursuant to a collective bargaining agreement.

## II. *Double-Counting Claim.*

Plaintiffs challenge defendants' policy of counting federal and state income tax refunds as income for purposes of determining ADC benefits and eligibility insofar as those same amounts have already been counted as income when withheld from earnings.

■ The Ninth Circuit indirectly resolved this issue in *Turner, supra.* If mandatory payroll deductions cannot be treated as income for purposes of AFDC calculations, those same .funds cannot be counted as income *again* when received as tax refunds. *See also Dickenson v. Petit,* 536 F.Supp. 1100, 1120 n. 20 (D.Me.1982) (dictum), *aff'd* 728 F.2d 23 (1st Cir.1984); *Williamson v. Gibbs,* 562 F.Supp. 687, 688–90 (W.D.Wa.1983). Defendants' policy counts the same funds as available as income both when earned (and withheld) in one year, and also when refunded in a later year.

The inequity of defendants' policy is obvious. Plaintiffs are entitled to final injunctive relief on their double-counting issue.

## III. *Notice And Hearing Claim.*

### A. *Defendants' Policy and Practice.*

All ADC recipients who have earned income are required to report their earnings on an AFS 859A Monthly Change Report form. The Monthly Change Report is mailed by defendants to ADC recipients between the fifth and the fifteenth of each calendar month. The month during which the form is mailed is referred to as the "budget month." The Monthly Change Report must be completed and returned to defendants as soon as all income has been received during the budget month, but no later than the tenth day of the following month, the "payment month."

The Monthly Change Report contains a notice to ADC recipients that they have a right to a hearing if the agency decides to reduce or terminate the family's ADC benefits based on the monthly report. The report also states that the recipient can continue to receive unreduced benefits pending a hearing to contest the action only if the recipient requests the hearing by the end of the budget month.

Defendants rely on the information provided on the Monthly Change Report in calculating ADC eligibility and benefits amounts for families with earned income. Once this calculation is made, the recipient is· mailed an AFS 446 Notice of Action form. This notice indicates that action has been taken on the ADC grant because of information furnished in the Monthly Change Report. Recipients receive the Notice of Action at approximately the same time as the ADC check, or in lieu of the ADC check.

The Notice of Action form sent to ADC recipients when this lawsuit was initiated merely informed the recipient of the amount of the grant and the right to request a conference or hearing on the agency action. Defendants report that this Notice of Action form has been superseded, and a new AFS 446 Notice of Action form is now being sent to recipients. The new form states the amount of the grant, sets forth the regulations supporting the action, and informs the recipient of the right to request a hearing. The notice also states that if a hearing is requested the grant will be continued in the new amount pending the hearings decision and if the decision is in the recipient's favor, a corrective payment will be made.

### B. *Federal Regulations.*

The Social Security Act mandates an opportunity for fair hearing for welfare recip-

ients. 42 U.S.C. § 602(a)(4). The relevant portions of the federal regulations implementing this mandate provide as follows:
§ 205.10 Hearings.

(a) State plan requirements. A State plan under title ... IV–A ... of the Social Security Act shall provide for a system of hearings under which:

. . . . .

(4) In cases of intended action to discontinue, terminate, suspend or reduce assistance . . . .

(i) The State or local agency shall give timely and adequate notice except as provided for in paragraphs (a)(4)(ii), (iii), or (iv) of this section. Under this requirement:

(A) "Timely" means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective;

(B) "Adequate" means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing (if provided) and a State agency hearing, and the circumstances under which assistance is continued if a hearing is requested.

(ii) The agency may dispense with timely notice but shall send adequate notice not later than the date of action when;

. . . . .

(H) For AFDC, the agency takes action because of information the recipient furnished in a monthly report or because the recipient has failed to submit a complete or a timely monthly report without good cause. (See § 233.37) . . . .

. . . . .

(7) A State may provide that a hearing request made after the date of action (but during a period not in excess of 10 days following such date) shall result in reinstatement of assistance to be continued until the hearing decision, unless at the hearing it is determined that the sole issue is one of State or Federal law or policy. In any case where action was taken without timely notice, if the recipient requests a hearing within 10 days of the mailing of the notice of the action, and the agency determines that the action resulted from other than the application of State or Federal law or policy or a change in State or Federal law, assistance shall be reinstated and continued until a decision is rendered after the hearing.

45 C.F.R. § 205.10.
§ 233.27. How monthly reports are treated and what notices are required (AFDC).

(a) What happens if a completed monthly report is received on time. When the agency receives a completed monthly report as specified in § 233.26, and if all eligibility conditions are met, it shall process the payment. The agency shall notify the recipient of any changes from the prior payment and the basis for its determinations. This notice must meet the requirements of § 205.-10(a)(4)(i)(B) of this chapter on adequate notice if the payment is being reduced or assistance is terminated as a result of information provided in the monthly report. The notice must be mailed to arrive no later than the resulting payment or in lieu of the payment. A recipient has 10 days from the date of the notice to request a hearing in order to receive reinstatement. . . .

45 C.F.R. § 233.37.

C. *Adequacy of Notice.*

■ The language of section 233.37 read in combination with section 205.10 requires that notice to recipients whose grants are reduced or terminated on the basis of information provided in a Monthly Change Report include: (1) a statement of what action the agency intends to take, (2) any changes from prior payment, (3) the basis for the determinations, (4) the reasons for the intended agency action, (5) the specific regulations supporting such action, (6) an explanation of the individual's right to request a

hearing, and (7) the circumstances under which assistance is continued if a hearing is requested.

Defendants' newly revised AFS 446 Notice of Action satisfies most of these requirements. The parties dispute, however, whether the notice provides the reasons for the intended agency action and the basis for any changes from prior payment. Defendants argue that these requirements are met by the statement on the form that "[t]his amount is based on the information you reported to us on the AFS 859A Monthly Change Report." Plaintiffs disagree, arguing that this statement is of no assistance to a recipient in deciding whether to request a hearing. Plaintiffs assert that the regulations mandate that any notice of grant reduction or termination based on earned income include at a minimum the amount of income that was counted, the amount of each deduction that was allowed or disallowed, and any other figures used to calculate the amount of ADC benefits.

Defendants concede that inclusion of this information would be helpful to recipients, and note that they have been developing an improved computer system to provide it. They assert, however, that the information is not required by law, nor is it essential to recipients.

Defendants note that two other forms sent to recipients, the AFS 488 and AFS 859A Monthly Change Report, explain how grant amounts are determined. They also emphasize that recipients may request assistance and information from AFS at any time. Defendants reason that while a more detailed notice might lessen the risk of erroneous deprivation of benefits in some cases, the opportunity to inquire about the method of computation or any other matter offsets any prejudice to a recipient from a lack of detail.

In determining whether the notice at issue is adequate, I am guided by the language of the regulations. The language of the regulations is not sufficiently specific to be determinative, however. Therefore, as other courts have done, I construe the regulations as mandating compliance with the requirements of due process. *Garrett v. Puett,* 707 F.2d 930 (6th Cir.1983); *Jones v. Blinziner,* 536 F.Supp. 1181, 1197 (N.D. Ind.1982); *Buckhanon v. Percy,* 533 F.Supp. 822, 831 (E.D.Wis.1982).

The Supreme Court has said that "[t]he constitutional sufficiency of procedures provided in any situation … varies with the circumstances." *Landon v. Plasencia,* 459 U.S. 21, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982). Evaluating the procedures in a given case entails weighing competing interests:

> [C]ourts must consider the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

*Id.* citing *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

A welfare recipient has a great stake in ensuring that benefits are not reduced or terminated unjustly. As the Supreme Court observed in *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970), "For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care."

The risk of reporting, computational, and keypunching errors in the process of determining ADC eligibility and benefit is not insubstantial. That risk is significantly increased if welfare recipients have no meaningful way to ascertain whether agency calculations as to grant amounts are accurate.

Defendants clearly have an interest in conserving fiscal and administrative resources, and providing welfare recipients with the detailed notice sought by plaintiffs could prove costly and time consuming. On the other hand, defendants, and the public as well, have an interest in seeing

that a recipient's benefits are not erroneously reduced or terminated. *See Goldberg*, 397 U.S. at 264–66, 90 S.Ct. at 1018–19.

The burden to defendants of providing a more detailed notice does not appear to be a heavy one. Defendants already prepare a monthly AFS 403B Authorization of Award form for each family with earned income. That form lists (1) the family's ADC need standard, (2) the amount of total income counted, (3) the amount of each of the deductions allowed, and (4) the resulting ADC benefits. Plaintiffs assert that it is precisely this information that is required in order for a recipient to know whether the grant amount is correct. Transferring this information onto the AFS 466 Notice of Action form would require some computer programming changes, but it is certainly feasible and would not entail great expense. In addition, defendants have indicated that they are already developing a program that would provide recipients with a more detailed accounting of the amount of disregards applied to ADC families with earned income.

Application of the Supreme Court's balancing test suggests that welfare recipients' interest in ensuring that their benefits are not reduced or terminated unjustly, coupled with the risk of erroneous deprivation of benefits and the obvious value of providing a more detailed notice, outweigh the burden on defendants of providing the information plaintiffs seek. A review of the relevant caselaw supports this analysis.

Several courts have considered the issue of adequacy of notices to welfare recipients of grant reductions or terminations. In a series of recent cases, the Seventh Circuit has held that due process requires an explanation of the specific reasons for reducing welfare benefits, *Vargas v. Trainor*, 508 F.2d 485 (7th Cir.1974), *cert. denied*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975), including a breakdown of income and allowable deductions. *Dilda v. Quern*, 612 F.2d 1055 (7th Cir.1980), *cert. denied sub nom., Miller v. Dilda*, 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980);

*Banks v. Trainor*, 525 F.2d 837 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). In *Dilda v. Quern*, the court reasoned that without such calculations, a recipient has little protection against errors committed by welfare personnel:

Unless the welfare recipients are told why their benefits are being reduced or terminated, many of the mistakes that will inevitably be made will stand uncorrected, and many recipients will be unjustly deprived of the means to obtain the necessities of life.

*Dilda*, 612 F.2d at 1057, quoting *Vargas*, 508 F.2d at 490. Other courts have found notices to welfare recipients inadequate because the notice at issue failed to include sufficient detail to enable a recipient to determine whether an error had been made. *See, e.g., Jones v. Blinziner*, 536 F.Supp. 1181 (N.D.Ill.1982) (notice failed to provide calculations leading to grant decisions); *Buckhanon v. Percy*, 533 F.Supp. 822 (E.D.Wis.1982) (notice failed to provide specific information on which grant decision based), *modified in part on other ground*, 708 F.2d 1209 (7th Cir.1983); *Philadelphia Welfare Rights Organization v. O'Bannon*, 525 F.Supp. 1055 (E.D.Pa.1981) (notice failed to contain, among other things, an explanation of the reasons for reduction or termination, and the figures used in the calculations); *Willis v. Lascaris*, 499 F.Supp. 749 (N.D.N.Y.1980) (notice failed to state amount of reduction of aid; failed to state reason for reduction; and failed to provide computations).

The fact that recipients may ask for assistance from welfare caseworkers in understanding why the reduction or termination occurred does not remedy the shortcomings of an inadequate notice. As one court explained, "It is true that defendant's notice invites the recipient to inquire further or to request a hearing, but this improperly places on the recipient the burden of acquiring notice whereas due process directs defendants to supply it ...." *Philadelphia Welfare Rights Organization v. O'Bannon*, 525 F.Supp. at 1061, quoting

*Malanson v. Wilson,* No. 79–116 (D.Vt. Aug. 12, 1980).

Moreover, although defendants assert that the recipient's caseworker is always available to provide assistance and information, this is not true in practice. Affidavits and trial testimony indicated that caseworkers are often unavailable to discuss problems with recipients, and that recipients frequently find inadequate caseworkers' explanations concerning computation of grant amounts.

The Sixth Circuit recently held adequate notices of reductions or terminations of welfare benefits even though the notices did not include mathematical calculations used in arriving at grant amounts. *Garrett v. Puett,* 707 F.2d 930 (6th Cir.1983). The notices at issue in *Garrett,* however, informed recipients not only of the ultimate reason for the reductions or terminations, *i.e.* changes in federal law with respect to treatment of certain income or assets, but also individualized reasons. For example, one notice informed the recipient that her AFDC benefits were to be terminated, stating, among other things, " 'A portion of the income of your husband/wife (stepparent of your children) had to be counted in determining your eligibility for assistance,' and 'The total income which had to be counted for your family is more than 150% of the Department's need standard so your case must be closed.' " *Garrett v. Puett,* 557 F.Supp. 9, 12 (M.D.Tenn.1982). The notices at issue here provide no individualized reasons for changes in grant amounts.

In *Turner v. Walsh,* 435 F.Supp. 707 (W.D.Mo.1977), *aff'd,* 574 F.2d 456 (8th Cir. 1978), the Eighth Circuit held adequate notices to AFDC recipients of reduction and termination of benefits even though they contained no individualized reasons for the reductions. The notices indicated that the reason for the changes was that a new state law changed the method of determining AFDC benefits.

Both *Garrett* and *Walsh* involved across-the-board changes in benefits based on changes in state or federal law. Plaintiffs argue that under such circumstances, a court is likely to be influenced by the fact that the state is attempting to implement massive, state-wide policy changes on a short time frame, and that an after-the-fact court decision would require wholesale reinstatement of benefits pending issuance of new notices. Certainly in such a situation the interest of the government in using the current procedure rather than additional or different procedures takes on more weight.

The distinction advanced by plaintiffs finds support in *LeBeau v. Spirito,* 703 F.2d 639 (1st Cir.1983), where recipients' AFDC benefits were reduced or terminated when the state implemented OBRA mandated changes in benefits. The notices at issue in *LeBeau* contained a breakdown of income and deductions for each recipient, and the calculations used to arrive at the grant amount. Nonetheless, plaintiffs asserted that the notices were also required to explain how the laws applied to the facts of each recipient's case. The court held that the notices satisfied both federal regulations and due process. The court noted:

[T]he notices involved an across-the-board reduction in welfare benefit mandated by statutory change. In such circumstances, this court has recognized that due process may set a lower standard for determining a notice to be adequate than where the reduction or termination of aid is on an individual basis.

702 F.2d at 644–45, citing *Velazco v. Minter,* 481 F.2d 573, 576 (1st Cir.1973).

Although this distinction was apparently not a factor in the Seventh Circuit's line of cases culminating in *Dilda,* it is a reasonable basis for distinguishing this case from *Garrett, Walsh,* and *LeBeau.* The notices at issue in this case involve not across-the-board changes, but changes due to an individual's receipt of earned income.

The only explanation an Oregon ADC recipient is given for a reduction or termination of benefits is the statement on the AFS 466 Notice of Action form that "the grant amount is based on the information you reported to us on the AFS 859A, Monthly Change Report." This statement is of little assistance to a recipient in deter-

mining whether the grant reduction or termination was in error.

■ I conclude that the AFS 466 Notice of Action fails to comply with the requirements of 45 C.F.R. §§ 205.10 and 233.37 and the requirements of the due process clause because it fails to satisfactorily explain the basis for the changes from prior payments and the reasons for the agency action. I hold that in the case of reduction or termination of ADC benefits due to receipt of earned income, the notice must include at a minimum the amount of income that was counted, the amount of each deduction that was allowed or disallowed, and any other figures that were used to calculate the amount of the grant.

### D. *Right to Reinstatement of Benefits Pending Hearing Decision.*

Plaintiffs contend that when ADC benefits are reduced or terminated due to earned income, a recipient who timely requests a hearing is entitled to reinstatement of benefits pending the hearing decision. Defendants argue that they do provide such an opportunity for reinstatement pending the hearing decision, and in the alternative, that there is no requirement that they provide an opportunity for reinstatement.

An opportunity for reinstatement of benefits pending a hearing decision amounts to an opportunity for a pre-reduction or pre-termination hearing. The Supreme Court has held that when welfare benefits are discontinued, due process requires that the recipient be given a pre-termination hearing. *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). The Court observed that "the crucial factor in this context ... is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." *Id.* (emphasis in original).

■ This principle has been incorporated into the federal regulations regarding hearing requirements for ADC programs. Although welfare recipients are not entitled

to advance notice when their benefits are reduced or terminated, they are entitled to request reinstatement of benefits pending a hearing decision. This serves the same purpose as the pre-termination hearing required by the Court in *Goldberg.*

■ It is difficult to understand how defendants can reasonably argue that they provide ADC recipients with the opportunity to have benefits reinstated pending a hearing. Defendants point to the AFS 859 Monthly Change Report, which informs recipients of their right to request a hearing on any change of benefits based on the report, and which provides: "If you request a hearing by the end of the month in which you receive this notice, you will continue to receive assistance until a hearing decision is made."

The problem with defendants' argument is that recipients do not receive notice of any change in benefits until the month *following* the month in which they received their monthly report. Thus, in order to receive continued benefits pending a hearing, recipients must request a hearing before defendants have even calculated the amount of ADC benefits payable. Defendants' practice cannot be said to provide recipients with a meaningful opportunity to request a pre-reduction or pre-termination hearing.

■ Nor does the AFS 466 Notice of Action form suggest to recipients that they are entitled to reinstatement of benefits pending a hearing decision. The Notice of Action, received at approximately the same time as the ADC check or in lieu of the check, informs the recipient of the amount of the grant and states that the amount is based on information reported on the AFS 859A Monthly Change Report. The notice also states:

> If a hearing is requested, your grant will be continued in the same amount pending the hearing decision. This is because the grant amount is based on information you provided the agency. If the hearing decision rules in your favor, a corrective payment will be made to you.

The timing of defendants' Notice of Action satisfies federal regulations. The regulations provide that when an agency takes action because of information furnished by a recipient in a monthly report, notice of that action must be mailed to arrive no later than the resulting payment or in lieu of payment. 45 C.F.R. § 233.37(a). "Timely" notice (defined as ten day advance notice) is not required. 45 C.F.R. § 205.-10(a)(4)(ii)(H). The regulations provide, however, that

> In any case where action was taken without timely notice, if the recipient requests a hearing within 10 days of the mailing of the notice of action, and the agency determined that the action resulted from other than the application of State or Federal law or policy or a change in State or Federal law, assistance shall be reinstated and continued until a decision is rendered after the hearing.

45 C.F.R. § 205.10(a)(7). Any legal action might be said to have "resulted from the application of State or Federal law." If this provision is to be meaningful, given the scheme of the regulations and the various reasons for agency action, I must assume that it refers to across-the-board changes implementing state or federal law, and that action based on a recipient's report of earned income is not encompassed within the provision.

This construction is consistent with the provision in 45 C.F.R. § 233.37(a) that "[a] recipient has 10 days from the date of the notice to request a hearing in order to receive reinstatement." If further support is needed for this interpretation, the comments published by the Department of Health and Human Services at the time 45 C.F.R. § 233.37 was adopted provide such support:

> If a completed monthly report is received on time, the rules require States to process the payment and notify the recipient if there are changes from prior payment and the basis for those changes. The agency must mail the notice at the same time as the resulting payment or in lieu of the payment if assistance has been terminated or suspended. A recipient whose benefit is reduced or terminated is protected because he or she may have his or her previous month's level of assistance reinstated by requesting a fair hearing within 10 days of the date of the notice.

47 Fed.Reg. 5665 (Feb. 5, 1982).

I hold that defendants' current practice and policy violates due process guarantees and controlling federal regulations, which require that when an ADC recipient requests a hearing within ten days of receiving notice of agency action reducing or terminating benefits, benefits must be reinstated pending the hearing decision.

## CONCLUSION

Plaintiffs are entitled to final declaratory and injunctive relief on each of the three claims alleged. Plaintiffs' counsel is directed to prepare a proposed order consistent with this opinion.

IT IS SO ORDERED.