**Nilsa ORTIZ, John Peek, Annie Mae Revelle, Marcinda Jackson and Denise Trader, individually and on behalf of all other persons similarly situated and Marsha Curtis (pltf-intervenor) (13)**

v.

**Thomas P. EICHLER, in his official capacity as Secretary of the Delaware Department of Health and Social Services, and Phyllis T. Hazel in her official capacity as Acting Director of the Department's Division of Economic Services.**

**Appeal of Thomas EICHLER and Phyllis Hazel.**

No. 85–5606.

United States Court of Appeals, Third Circuit.

Argued June 2, 1986.

Decided July 9, 1986.

Richmond L. Williams (argued), Deputy Atty. Gen., Delaware Dept. of Justice, Wilmington, Del., for appellants.

Anne M. Perillo (argued), Community Legal Aid Society, Inc., Wilmington, Del., for appellees.

Before ALDISERT, Chief Judge, and GARTH and SLOVITER, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Chief Judge.

This appeal requires us to decide two major questions relating to procedures used by Delaware for denying or terminating Aid to Families with Dependent Children (AFDC), Food Stamps and Medicaid benefits. We must first decide the extent of a pre-hearing notice required to be given by Delaware under the due process clause of the 14th Amendment; we must also decide the extent of confrontation of witnesses at the hearings. Delaware authorities are the appellants. They argue that the district court imposed notice requirements that are too detailed and that they should not be required to conduct denial or termination hearings with the formality directed by the court. For the reasons set forth below, we will affirm the district court.

I.

Class representatives of all recipients of or applicants for federally-funded public assistance benefits administered by the Delaware Department of Health and Social Services (hereinafter "claimants") filed an action pursuant to 42 U.S.C. § 1983 against appellants, the Secretary of the Delaware Department of Health and Social Services (DHSS), and the Director of DHSS's Division of Economic Services (DES). They sought declaratory and injunctive relief, objecting to DES procedures for the denial or termination of Aid to Families with Dependent Children (AFDC), Food Stamps and Medicaid benefits. They alleged, *inter alia*, that these procedures violated the laws and regulations governing these programs, and deprived them of property without due process of law.

Plaintiffs moved for class certification and summary judgment on all but two claims. The district court granted the class certification motion and, in part, their motion for summary judgment. *Ortiz v. Eichler*, 616 F.Supp. 1046 (D.C.Del.1985). The district court subsequently issued an opinion on reargument, *Ortiz v. Eichler*, 616 F.Supp. 1066 (D.C.Del.1985), entered an order relating to issues decided in these opinions [August 16, 1985 Order (*reprinted in* appendix in br. for appellants)], and issued a third opinion covering procedures the parties should follow in complying with the court's order. All parties agree that the effect of the three opinions and order was to grant summary judgment as requested by appellees on all but one issue.[1] The district court granted declaratory relief on all other issues, August 16, 1985 Order at 1–2; and immediately enjoined DES from considering *ex parte* evidence and statements of adverse declarants not available for cross-examination. *Id.* at 3. The court also ordered that commencing October 1, 1985, DES notices of adverse action must comply with all regulatory and due process requirements and that final decision letters must contain all of the information required by federal regulations. *Id.* at 3–5. Finally, the district court enjoined DES from allowing the state hearing representative to prepare the recommended hearing decision in food stamp cases and ordered that the opportunity for new hearings be given to all class members who were adversely affected by the procedural deficiencies in their prior hearings. *Id.* at 5–6. The Delaware agencies have appealed.

## II.

Before us, DES challenges those portions of the district court's order concerning the pre-hearing notice of agency action and the use of adverse statements of absent witnesses at agency hearings.

■ Because this appeal involves the application and interpretation of legal princi-ples, the standard of review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981). *See also Barnes v. Cohen*, 749 F.2d 1009, 1013 (3d Cir.1984) (on review of district court rulings concerning interpretations of federal and state regulations under the AFDC program, standard is whether district court applied correct legal precepts), *cert. denied,* —— U.S. ——, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985).

## III.

■ Before addressing the merits of DES's contentions, we must determine whether this appeal is properly before us. The Delaware authorities contend that appellate jurisdiction lies pursuant to 28 U.S.C. § 1291. Br. for Appellants at 1. But claimants counter that the court's order was not final under § 1291 because the order granted only partial summary judgment for claimants. We conclude that appellate jurisdiction lies pursuant to 28 U.S.C. § 1292(a)(1).

Courts of appeals have jurisdiction "of appeals from all final decisions of district courts...." 28 U.S.C. § 1291. Rule 54(b), F.R.Civ.P., expressly provides that an order adjudicating less than all claims in an action with multiple claims is not final unless the district court makes "an express determination that there is no just reason for delay ... on express direction for the entry of judgment." DES concedes that the district court has not disposed of all of claimants' claims, and DES has not sought a Rule 54(b) determination and certification from the district court. Nor does DES assert that the district court's order is appealable under the "collateral order exception" of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Consequently, the district court's order is not appealable under 28 U.S.C. § 1291. *Brooks v. Fitch*, 642 F.2d 46, 47 (3d Cir. 1981).

---

**1.** That issue, concerning the lack of an impartial decision-maker in AFDC and Medicaid cases, is still pending before the district court. *See* Br. for appellants at 3; Br. for appellees at 2.

Unlike section 1291, however, section 1292 provides for appellate jurisdiction of appeals from "[i]nterlocutory orders of the district courts of the United States ... granting ... [or] refusing ... injunctions...." 28 U.S.C. § 1292(a)(1). Because the district court's order granted some of claimants' requests for injunctive relief, this court has jurisdiction of DES's appeal under § 1292(a)(1). The additional declaratory relief from which DES appeals tracks issues virtually identical to those raised by the grant of injunctive relief. Where the additional elements of the district court's order are closely intertwined with those granting or denying injunctive relief, the exercise of jurisdiction over the additional elements is proper. *Gomez v. Turner*, 672 F.2d 134, 138 (D.C.Cir.1982) (appellate review of both injunctive and declaratory relief afforded by district court's partial grant of summary judgment); *Adashunas v. Negley*, 626 F.2d 600, 602 (7th Cir.1980) (where injunctive relief was deemed part of order denying motion for partial summary judgment, appellate court could review entire order on appeal "[b]ecause the denial of injunctive relief is interdependent with the remainder of the appealed order....").[2] We now turn to the merits of the appeal.

## IV.

Claimants had contended that the notices routinely sent by DES to public assistance claimants prior to denying or terminating benefits were inadequate because the notices failed to explain the reasons for DES's action or to present calculations justifying that action. The district court agreed. It directed DES to issue notices that complied with the require-ments of the applicable regulations and due process:

> At a minimum, these notices shall ... 3) provide a detailed individualized explanation of the reason(s) for the action being taken which includes, in terms comprehensible to the claimant, an explanation of why the action is being taken and, if the action is being taken because of the claimant's failure to perform an act required by a regulation, an explanation of what the claimant was required by the regulation to do and why his or her actions failed to meet this standard; and 4) if calculations of income or resources are involved, set forth the calculations used by the agency, including any disregards or deductions used in the calculations, explanations of what income and/or resources the agency considers available to the claimant and the source or identity of these funds, and the relevant eligibility limits and maximum benefit payment levels for a family or assistance unit of the claimant's size.

August 16, 1985 Order at 4.

## A.

DES contends that the pre-hearing notice required by the district court goes beyond the minimum requirements of due process and the applicable federal regulations. It argues that order "requires individual level data of an unlimited degree of specificity which would result in a notice virtually incomprehensible to a claimant and would be a substantial administrative burden." Br. for appellants at 14. We disagree.

The district court's order tracks the requirements of "adequate" notice set forth in the applicable federal regulations.[3] Al-

---

**2.** Alternatively, jurisdiction of this appeal from the district court's order granting partial declaratory judgment may exist under section 1292(a)(1), if, standing alone, the effect of the declaratory judgment is similar to injunctive relief and "of 'serious, perhaps irreparable, consequence' that can be 'effectively challenged' only by immediate appeal." *Presinzano v. Hoffman-LaRoche, Inc.*, 726 F.2d 105, 109 (3d Cir. 1984) (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981)); *see also Melendez v. Singer-Friden*

*Corp.*, 529 F.2d 321, 323 (10th Cir.1976) ("Courts have recognized that many orders not dealing exclusively with injunctions do nevertheless constitute interlocutory orders impairing injunctive relief and are thus entitled to immediate appellate review" under section 1292(a)(1)).

**3.** *See, e.g., AFDC* regulations at 45 C.F.R. § 205.-10(a)(4)(19) (1985):

> In cases of intended action to discontinue, terminate, suspend or reduce assistance or to

though these regulations do not specify precisely the information required for adequate notice, the district court properly looked to requirements mandated by the due process clause to flesh out the details. *Garrett v. Puett,* 707 F.2d 930 (6th Cir. 1983); *Schroeder v. Hegstrom,* 590 F.Supp. 121, 127 (D.Ore.1984). The leading case of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), teaches that due process requires that claimants facing termination of public assistance benefits must be given "adequate notice detailing the reasons for a proposed termination...." *Id.* at 267, 90 S.Ct. at 1020. Such notice is necessary to protect claim-

ants against proposed agency action "resting on incorrect or misleading factual premises or on misapplication of rules to policies of the facts of particular cases." *Id.* at 268, 90 S.Ct. at 1020.

### B.

In respecting *Goldberg v. Kelly's* requirement of "adequate notice detailing the reasons," the court was of the view that this required a statement of the calculations used by the agency. Although vigorously contested by DES, this requirement is amply supported by a formidable array of case law.[4] *See Dilda v. Quern,* 612 F.2d

---

change the manner or form of payment to a protective, vendor, or two-party payment under § 234.60:

(i) The State or local agency shall give timely and adequate notice, .... Under this requirement:

\* \* \* \* \* \*

(B) "Adequate" means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action

....

and 45 C.F.R. § 206.10(a)(4) (1985):

Adequate notice shall be sent to applicants and recipients to indicate that assistance has been authorized (including the amount of financial assistance) or that it has been denied or terminated. Under this requirement, adequate notice means a written notice that contains a statement of the action taken, and the reasons for and the specific regulations supporting such action....

*Medicaid* regulations at 42 C.F.R. § 431.210 (1985):

A notice required under § 431.206(c)(2) of this subpart must contain—

(a) A statement of what action the agency intends to take;

(b) The reasons for the intended action;

(c) The specific regulations that support, or the change in Federal or State law that requires the action

....

*Food Stamps* regulations at 7 C.F.R. § 271.2 (1985):

"*Adequate notice*" in a Monthly Reporting and Retrospective Budgeting system means a written notice that includes a statement of the action the agency has taken or intends to take; the reason for the intended action....

and 7 C.F.R. § 273.10(g)(ii) (1985):

(ii) *Notice of denial.* If the application is denied, the State agency shall provide the

household with written notice explaining the basis for the denial....

and 7 C.F.R. § 273.2(j)(1)(ix) (1985):

(j) *State agency action on reports*—

(1) *Processing.* Upon receiving monthly report, the State agency shall:

\* \* \* \* \* \*

(ix) Provide specific information on how the State agency calculated the benefit level if it has changed since the preceding month, either with the issuance or in a separate notification.

4. We recognize that the district court's opinion did not expressly set forth the balancing of interests required by *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). Because "due process is flexible, and calls for such procedural protection as the situation demands," *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), the determination of the appropriate process requires a balancing of three competing interests:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903 (citations omitted); *accord, Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

After considering the interests identified in *Mathews* we conclude that the district court's order was consistent with the requirements of due process. The importance of appellees' interest in welfare benefits is well established. *Goldberg v. Kelly,* 397 U.S. 254, 264–65, 90 S.Ct. 1011, 1018–19, 25 L.Ed.2d 287 (1970). Also

1055, 1057 (7th Cir.) (per curiam) (the pre-hearing notice of intended reduction or termination of AFDC benefits did not meet due process requirements because, "[t]hough it states the ultimate reason for the reduction or cancellation of benefits, the notice fails to provide the recipient with a breakdown of income and allowable deductions" such that "recipients could determine the accuracy of the computations"), *cert. denied sub nom. Miller v. Dilda,* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980); *Schroeder v. Hegstrom,* 590 F.Supp. at 126–130 (AFDC) (citing cases); *Jones v. Blinziner,* 536 F.Supp. 1181, 1197–1200 (N.D.Ind.1982) (AFDC and Medicaid). The rationale of these cases, primarily from the Seventh Circuit, has been accepted in this circuit. *See Hill v. O'Bannon,* 554 F.Supp. 190, 197 (E.D.Pa. 1982) (AFDC); *Philadelphia Welfare Rights Organization v. O'Bannon,* 525 F.Supp. 1055, 1060–61 (E.D.Pa.1981) (Food Stamps).

### C.

Cases cited by DES in support of a less detailed notice are easily distinguished. The agency action challenged here concerns denying or terminating benefits on an individual, case-by-case basis. Yet DES relied on authority that described so-called "mass changes," such as those resulting from new legislation. *See, e.g., Garrett v. Puett,* 707 F.2d 930 (6th Cir.1983) (expressly declining to apply the Seventh Circuit's rationale to changes resulting from new legislation); *LeBeau v. Spirito,* 703 F.2d

639, 643–44 (1st Cir.1983). DES also relies on the teachings of *Atkins v. Parker,* 472 U.S. ——, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985), but we believe that it is not controlling. There the Supreme Court expressly stated that its decision "does not concern the procedural fairness of individual eligibility determinations. Rather, it involves a legislatively mandated substantive change in the scope of the entire program." *Id.* at ——, 105 S.Ct. at 2529.

We are persuaded that the district court's formulation was the product of thoughtful analysis supported by reasoned decisions in other courts.

### D.

Finally, DES contends that its benefit calculations deal only with "case level data," yet the court requires "individual level data." [5] It argues that this will require DES to generate *de novo* specific and detailed financial data, a burden that is "several orders of magnitude (if not incalculably) greater" than that imposed in cases relied upon by the district court. Br. for appellants at 18 n. 16; *see also id.* at 14 n. 14. We feel that DES is reading too much in the court's order.

Nothing in the district court's opinions or order supports DES's assertion that it will be required to provide, *de novo,* "individual level data" to claimants. The court expressly stated that, "if calculations of income or resources are involved" in the intended agency action, the agency must "set forth *the calculations used by the agency* ...." August 16, 1985 Order at 4 (empha-

well recognized is the need for specific and detailed notice of the bases for adverse agency action in order to guard against the erroneous deprivation of these benefits. *Banks v. Trainor,* 525 F.2d 837, 842 (7th Cir.1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). Finally, DES's contentions concerning the administrative burden of complying with this aspect of the district court's order are vastly overstated because they are based on an erroneous interpretation of the requirements imposed by that order. *See infra* text at 895–896.

**5.** According to DES:
    Individual level data is comprised of the resources and income of each individual in an

assistance unit or case. The sum of the resources or income of all individuals in the assistance unit are talleyed to obtain the case resources or income (and constitutes case level data). Individual level data could range in specificity from a total for each category of income or resource to an itemization of each asset or payment making up the total in each category. Case level data is the data from which the determination of eligibility of the case, or assistance unit is made (e.g., earned income for the case, unearned income for the case).

Br. for appellants at 11 n. 11.

sis added). The district court viewed DES's routine notice procedures as inadequate because they did not contain "the specific calculations *used by the agency* ...." 616 F.Supp. at 1061 (emphasis added). The court further stated that, "[i]f calculations of a claimant's income or resources are involved, DES must set forth *the calculations it used to arrive at its decision,* i.e., explain what funds it considers the claimant to have and what the relevant eligibility limits are." *Id.* at 1062 (emphasis added). These statements clearly say that DES is to include in the notice only those calculations used by the agency in making its decision. The court's order requires no additional burdens. To suggest otherwise is to exaggerate.

Claimants do not contend that the district court's order requires inclusion of "individual level data." The district court opinions and order do not by their terms require the inclusion of "individual level data." Nor do we read such a requirement into the order. We now turn to the other major issue presented for our consideration, the question of the quality of evidence to be adduced at DES' hearings.

## V.

■ Claimants sought to enjoin DES's practice of considering at hearings adverse statements from declarants who were not available for cross-examination or confrontation at hearings. This practice, they said, violated claimants' rights under the applicable federal regulations to "have adequate opportunity ... [t]o question or refute any testimony or evidence, including [the] opportunity to confront and cross-examine adverse witnesses." 45 C.F.R. § 205.-10(a)(13)(vi) (1985) (AFDC); *accord* 42 C.F.R. § 431.242(e) (1985) (Medicaid); 7 C.F.R. §§ 273.15(p)(5), 273.16(e)(2)(ii) (1985) (food stamps). The district court agreed. It held that the DES practice violated the rights of confrontation and cross-examination afforded by the applicable regulations. 616 F.Supp. at 1068. The court expressly declined to reach appellees' additional argument that the DES hearing practices violat-

ed claimant's constitutional due process rights, *id.* at 1068, n. 2. The court enjoined DES against "admitting into evidence and considering statements by witnesses not present at hearings for federal public assistance if claimants do not have an opportunity to confront and cross-examine those witnesses." Order of August 16, 1985 at 3.

DES contends that the district court's injunction constitutes "an overbroad proscription of the use of hearsay evidence when the declarant is unavailable." Br. for appellants at 24. Its argument focuses on the limits of the constitutional rights of confrontation in both the administrative, *e.g., Goldberg v. Kelly,* 397 U.S. 254, 268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970) (procedural due process right), and criminal, *e.g., Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (sixth amendment right), contexts. But the district court based its decision solely on the requirements of the applicable federal regulations, and not on the Constitution. *See Featherstone v. Stanton,* 626 F.2d 591, 593 (7th Cir.1980) (citing *Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372–1382, 39 L.Ed.2d 577 (1974)). DES provides no authority to support its suggestion that the applicable federal regulations do not mean what they say. We find the language devoid of ambiguity; claimants have the right to "question or refute any testimony or evidence, including [the] opportunity to confront and cross-examine adverse witnesses." 45 C.F.R. § 205.10(a)(13)(vi) (AFDC); *accord* 42 C.F.R. § 431.242(e) (Medicaid); 7 C.F.R. §§ 273.15(p)(5), 273.-16(e)(2)(ii) (food stamps).

■ Moreover, as we understand the district court's opinion and order, the district court did not prohibit all forms of hearsay evidence. As the district court itself noted, out-of-court statements which technically are hearsay, but where the claimant had an opportunity to cross-examine the witness at a prior court proceeding to which the claimant was a party, or hearsay testimony of DES staff who could be available as wit-

nesses upon request of the claimant, are admissible despite their hearsay nature.[6]

■ Similarly, under the district court's order, evidence which falls within recognized hearsay exceptions where cross-examination of the witness would not be meaningful, such as those enumerated in Federal Rule of Evidence 803, are generally not to be precluded from admission at DES hearings. For example, records of regularly conducted activities, public records and reports, vital statistics, records of religious organizations, marriage, baptismal and similar certificates, family records, records of documents affecting an interest in property, statements and documents affecting an interest in property, statements in ancient documents, market reports, commercial publications, learned treatises, judgments of previous convictions, judgments as to personal, family or general history or boundaries are admissible at administrative proceedings. Because DES has no subpoena power, it is only where out-of-court testimony consists of testimony given by live witnesses who could testify at the hearing, but who refuse to do so unless subpoenaed, that such testimony will be precluded from admission and consideration at the administrative hearing. Accordingly, we find no error in the district court's requirement that Delaware respect the federal regulations.

## VI.

We conclude, therefore, that the district court's order requiring appellants to provide detailed explanations in pre-hearing notices relating to these federally-funded welfare benefits are consistent with the requirements of the applicable federal regulations and do not exceed the requirements of the due process clause; and that the district court properly required appellants to comply with federal regulations governing the use of adverse statements of absent declarants in administrative hearings to determine eligibility for these welfare benefits.

For the foregoing reasons, the judgment of the district court will be affirmed.

6. Some hearsay evidence may be offered by DES that does not violate plaintiffs' rights to confront and cross-examine. For example, the admission of testimony from a court proceeding to which a claimant was a party would not violate those rights, nor would the admission of statements by persons, such as DES staff, who could be available as witnesses upon request. In both of these scenarios, the evidence would be hearsay but admissible because the claimant would have an opportunity to confront and cross-examine.

616 F.Supp. at 1068. The district court further noted that DES

has several methods by which it could bring itself into compliance with the regulations without imposing a flat ban on hearsay. The state could give DES the power to subpoena witnesses for hearings.... If the legislature returns the subpoena power to DES, most hearsay evidence could be admitted, because claimants would then have the power to compel confrontation with, and cross-examination of, hearsay declarants....

616 F.Supp. at 1068.